## STATE against JACOB PHELPS.

Vermont Stat.
vol. 1. p. 341.

A woman divorced *a vinculo matrimonii* is not a competent witness upon an indictment against her former baron, for a crime committed during coverture.

THE defendant was indicted upon the 24th section of the act for the punishment of certain capital and other high crimes and misdemeanors, for being a

married man, and as such being found in bed with a woman not his wife, under such circumstances as afforded presumption of an illicit intention.

<em>State<br>v.<br>Phelps.</em>

On trial to the Jury, Mr. Attorney offered to adduce as a witness on the part of the prosecution, *Lucy Phelps*, wife to the defendant at the time of the commission of the crime alleged, but afterwards divorced *à vinculo matrimonii*, and cited the case of *The State v. J. N. B.* decided in *Addison* County, *January* term, A. D. 1801.

<em>Vide ante,</em> vol.<br>1. p. 36.

*Hall*, for the respondent. We consider that there is a wide difference between the case cited, and that *sub lite*. In the case relied upon, the prisoner was indicted for *forgery*, a crime not any ways connected with married life. Here the indictment is for the very adulterous conversation which was the prevailing cause of the divorce.

It is true, that in our *professional books*, jealousy is not classed among those causes which disqualify a witness ; but in the *book of nature* we read that there is no passion that assails the human mind which so completely disqualifies it from seeing, knowing, or even relating the truth. The greatest judge of human nature among men has declared, that "jealousy doth *make* the meat it feeds on." From their greater sensibility this passion operates more powerfully on the softer sex ; and even when it ceases with their affection for the beloved object, it is too often succeeded by an animosity equally regardless of reason or of truth.

It will not certainly, then, be good policy to suffer a witness, thus violently prejudiced, to testify against

a defendant whose conduct she has seen through so jaundiced a medium, and who she may esteem herself justified in ruining *per fas aut nefas.*

The case cited stands alone. In the books there can be found no instance of a wife divorced *à vinculo matrimonii,* being admitted to testify against her former husband, as to any act done by him during coverture.

A wife under a second marriage, a former wife being living, may be a witness upon an indictment for bigamy against the husband *de facto.*

So, if a woman be taken away by force and married, she may, under the act of *Henry* VII. be a witness. But these decisions go on the position that these marriages are void, and the women who testify consequently not wives.

Some few instances may be found where a wife divorced *à mensa et thoro,* or separated by contract, may be a witness against her husband. But these cases, it is obvious, cannot apply.

Mr. Attorney arose to reply.

But the Chief Judge observed, that he had always considered the decision in the case of *The State* v. *J. N. B.* as not well founded. He considered it as not supported by law or sound polity. He had investigated the subject, and was fully prepared to decide against the admissibility of the witness.

JACOB, Assistant Judge, coincided in opinion, and the witness was not permitted to testify.

TYLER, Assistant Judge, *dissente.*

Mr. Attorney, for the State.
*Lott Hall,* for the prisoner.