CLARY *v.* WILLEY.*

*Practice. Innkeeper. Bailee.*

The question being whether defendant was an innkeeper, and the testimony, q. v., tending to show that he was, *held*, that it was for the jury to judge of the weight and sufficiency of the evidence, and not for the court.

Defendant, an innkeeper, but declared against as bailee for hire, by himself or servants, hitched plaintiff's horse, which was in his care, next a horse that he or his servants knew to be in the habit of kicking other horses, whereby plaintiff's horse was kicked and injured. *Held*, though plaintiff knew where his horse was hitched, and made no objection thereto, but did not know of the vicious habit of the other horse, that defendant was guilty of actionable negligence as such bailee in thus hitching plaintiff's horse.

It will not be assumed that the County Court omitted to instruct the jury upon material points, because the exceptions do not show that such instruction was given. The exceptions must show error—it will not be presumed.

CASE. The first count charged defendant as innkeeper with negligently caring for plaintiff's horse, whereby it was injured. The second count charged him with negligence in that behalf as bailee for hire. Plea, the general issue, and trial by jury, February Term, 1875, REDFIELD, J., presiding, and verdict for plaintiff.

It appeared that the house where defendant lived on January 15, 1873, when plaintiff's horse was injured, was originally built for a hotel, and as such was kept open many years by its former occupants. among whom was defendant; that in connection with this house was a dancing hall, the only one in the neighborhood, and that the young people of the neighborhood were accustomed to assemble at the defendant's house, sometimes without notice to him and sometimes upon his invitation, for the purpose of dancing and social entertainment; that on the occasion in question, defendant had given out that he would furnish music and oysters for an entertainment, and that the bill therefor would not exceed two dollars per couple, and that, with others, the plaintiff went to de-

fendant's house and participated in the entertainment, and paid a bill of $1.50 to the defendant.

Defendant gave evidence tending to prove, that on this and former occasions it was the custom for those attending the entertainments to either take care of their own horses, or assist therein.

It appeared that on this occasion quite a large party were present, and that the stables were filled with horses before plaintiff's arrival ; that parties arriving, assisted by those apparently in defendant's employ, had commenced putting horses into the floor of the barn upon the premises, and that plaintiff's horse was put in the floor, but it did not appear who hitched. it there. The plaintiff testified, among other things, that he accompanied his team to the yard, and there left it in charge of two boys, who, the testimony tended to show, were then in defendant's employ.

It appeared that several horses were hitched in the barn floor with plaintiff's horse, and that rails and slabs were placed between them to keep them apart. It also appeared that only a few of the many horses there that night were fed grain, and those only at the special request of those with them. The defendant gave evidence tending to show that the plaintiff, assisted by one of defendant's servants, obtained some grain and went where his horse was hitched in the barn floor, and fed it, and that he went directly to his horse, as though he knew where it was.

Plaintiff gave evidence tending to show that he did not know where his horse was hitched, and did not see it from the time he left it in the yard till it was being hitched up, when it was discovered to be lame ; that on said 15th of January, and before the plaintiff arrived at the defendant's house, another guest had come with a horse that was in the habit of kicking other horses, and that said guest informed the defendant's servants that it would not be safe to hitch his horse near any other horse ; and that plaintiff's horse was hitched by defendant's servants next to the horse that had the habit of kicking. The jury found specially, that defendant, on said 15th of January, was the keeper of a common inn.

The court defined and explained to the jury what would con-

stitute an innkeeper, or keeper of a " common inn," in a manner satisfactory to both parties, to which no exception was taken.

It also appeared that when the plaintiff's horse was taken from the floor, it was quite lame in one of its hind legs, but that it was hitched, and driven by plaintiff, accompanied by his wife, about two miles and a half, when the leg in which it was lame was broken, and the horse rendered worthless.

Defendant requested the court to charge the jury that if they found that the plaintiff knew where his horse was—that he was hitched in the barn floor with other horses, and himself fed his horse grain while thus hitched, and made no objection to the defendant nor any of his agents or servants because it was so hitched, though his horse was injured while thus hitched, and by reason thereof, defendant would not be liable. But the court refused to so charge, but charged that if the jury found that defendant was not an innkeeper, and that plaintiff himself put out his horse, and assumed the sole control, disposition, and care of it, that defendant would not be liable for injury that happened to it while in the floor; and though they found defendant an innkeeper, yet, unless they found that the arrangement in the barn floor with rails and slabs was as safe as stalls, or as safe as ordinary arrangements for keeping horses at hotels and livery stables, and injury happened to the horse while hitched there, defendant would be liable. To the refusal to charge, and to the charge as given, defendant excepted.

It appeared that there was at defendant's house on the 4th of July, 1872, a dance similar to the one on said 15th of January, and that some time in June, 1872, defendant obtained from the selectmen a license to keep a hotel, and defendant testified that he obtained said license for the purpose of protecting himself against possible prosecutions on account of having the party contemplated on said 4th of July, and such as they might thereafter have for the accommodation of the young people in the neighborhood. Defendant also admitted in his testimony that occasionally, though not often, strangers called and asked for lodging and food for themselves and horses, and that he had entertained such, and felt that said license would protect him from prosecu-

tion for taking bills for such entertainment, which bills he testified were always very small, usually such as they themselves chose to pay.

It appeared that defendant did not have any sign in connection with his house, and plaintiff gave no evidence tending to show that defendant was an innkeeper, other than as aforesaid, except that it was proved by two witnesses who resided in the neighborhood, that defendant kept them and their horses two and a half days, and received therefor one shilling per meal, and that they fed their horses with their own grain, and nothing was charged for use of barn, and that defendant notified them he could not keep them longer, because his wife was not well. The above was the only instance of entertainment proven as having been furnished by defendant, except on the occasions admitted by the defendant as aforesaid, and the foregoing was all the testimony tending to show that the defendant was an innkeeper on said 15th of January.

Defendant requested the court to charge the jury that the defendant was not a common innkeeper ; but the court refused to so charge, but left it to the jury to find upon the proof whether he was an innkeeper or not. To the refusal to charge as requested, and to the charge as given, the defendant excepted.

*W. W. Grout*, for defendant.

The court erred in submitting to the jury to find whether defendant was an innkeeper. This is a question of law, and should have been settled by the court. The facts set forth in the exceptions do not constitute defendant a common innkeeper. An occasional entertainment of strangers, as in this case, does not constitute one an innkeeper. *State* v. *Matthews*, 2 Dev. & Bat. 424 ; *Lyon* v. *Smith*, 1 Morris (Iowa) 184 ; *Parker* v. *Flint*, 12 Mod. 255 ; *Thompson* v. *Lacy*, 3 B. & Ald. 283. So a farmer and housekeeper like defendant, who furnishes refreshments, and music for dancing, and stable room for teams, for the accommodation of young people in the neighborhood, as in this case, is not an innkeeper to whom the common-law liability attaches. *Parkhurst* v. *Foster*, 5 Mod. 427 ; s. c. 1 Salk. 387 ; 2 Ld. Raym. 479.

The case does not show that defendant held out that he would receive travellers and sojourners, and that he would furnish entertainment for all who called.    Nothing short of this would constitute an innkeeper.    *Thompson* v. *Lacy, supra; State* v. *Chamblyss,* 1 Cheves (S. C.), 220 ; *Wintermute* v. *Clarke,* 5 Sandf. 247 ; *Doe* v. *Laming,* 4 Campb. 76 ; *Bonner* v. *Welbarn,* 7 Ga. 309. A common inn is for strangers, for travellers and wayfarers. Chit. Cont. 414.    See *Cayle's Case,* 8 Co. 32 a.    The several parties mentioned in exceptions did nothing towards constituting defendant an innkeeper.    He was such or not by his entertainment of travellers.

Defendant was entitled to compliance with his request, that if plaintiff knew where his horse was, and fed it, and made no objection, he so far assumed the care of it as to excuse defendant from everything but ordinary care.    It is tantamount to himself directing the disposition of his horse, and brings the case within the rule of *Cayle's Case,* 8 Co. 32 a.    See also 2 Story Cont. 153, (4th Am. ed.) ; *Dansey* v. *Richardson,* 25 Eng. Law & Eq. 91 ; 2 Kent Com. 592, (4th ed.) ; Story Bailm. 478 ; *Armistead* v. *White,* 6 Eng. Law & Eq. 349 ; *Albin* v. *Presby,* 8 N. H. 408 ; *Hawley* v. *Smith,* 25 Wend. 642 ; *Burgess* v. *Clements,* 4 M. & S. 306 ; *Farnsworth* v. *Packwood,* 1 Stark. 249.

Plaintiff was not in defendant's house as a guest nor as a traveller, but as a neighbor, for a special purpose, and under a special previous contract for his entertainment, viz. : that the price was not to exceed two dollars per couple, and no liability attaches except for ordinary care.    *York* v. *Grindstone,* 1 Salk. *388 ; *Jelly* v. *Clarke,* Cro. Jac. 188 ; Jones Bailm. 95, n. 3 ; *Berkshire Woolen Co.* v. *Proctor,* 7 Cush. 417 ; *Washburn* v. *Jones,* 14 Barb. 193 ; *McDonald* v. *Edgerton,* 5 Barb. 560 ; *Lawson* v. *Havre de Grace Bank,* 6 Har. & J. (Md.) 47 ; *Grinnell* v. *Cook,* 3 Hill, 485 ; *Binns* v. *Pigot,* 9 C. & P. 208 ; 2 Saund. Pl. & Ev. 216 ; *Thickstun* v. *Howard,* 8 Blackf. 535.    See also note to *McDaniels* v. *Robinson,* 26 Vt. 342.

*P. K. Gleed,* for plaintiff.

The evidence upon which defendant's first request was based, tended to show that plaintiff knew where his horse was hitched,

and did not protest against its remaining in that dangerous condition, but did not tend to establish any negligence in the plaintiff without which the injury would not have happened. The plaintiff's right to recover rested upon the defendant's liability as an innkeeper. The question then is, whether mere knowledge on the part of the guest, of the condition in which the innkeeper had placed his horse, would exonerate the latter from his liability as such innkeeper. 1. A guest, having placed his goods and chattels *infra hospitium*, may, as to the safety thereof, rest on the protection that the law casts around him 2. In case of damage to goods and chattels so placed, the innkeeper is, *prima facie*, responsible. 3. If the innkeeper would exonerate himself from this *prima facie* liability, by reason of the conduct of the guest, he must show some negligence on the part of the guest without which the damage would not have occurred. *Cayle's Case*, 1 Smith Lead. Cas. 241, and note ; s. c. 8 Co. 32 a ; *Dawson* v. *Chamney*, 5 Q. B. 164 ; *Armistead* v. *Wilde*, 17 Q. B. 260 ; *Cashill* v. *Wright*, 6 E. & B. 890 ; *Bennett* v. *Mellar*, 5 Term, 273 ; *Hill* v. *Owen*, 5 Blackf. 323.

Again, the evidence did not tend to show that defendant informed plaintiff where his horse was hitched, and that he must take the risk. To exonerate himself from liability, he should have so informed plaintiff, and then, if plaintiff suffered his horse to be so hitched, the charge requested might have been correct. *Jones* v. *Tyler*, 1 A. & E. 522 ; *Richmond* v. *Smith*, 8 B. & C. 9.

As an innkeeper, defendant was bound to be furnished with suitable stable-room for the horses of strangers and travellers. Gen. Sts. c. 95, s. 4. It was clearly within the province of the jury, under proper instructions, to determine whether defendant's stable-room was suitable, and as a guide, they are directed to such accommodations as practical experience had led innkeepers and livery-stable keepers to adopt.

It was clearly a question for the jury to determine whether the defendant was acting as an innkeeper at the time he took plaintiff's horse, as the testimony tended to show that he was.

The opinion of the court was delivered by

Ross, J. The defendant's request·to the court to charge the jury that he was not a common innkeeper, was properly refused. Whether he was, on the occasion when the plaintiff's horse received its injury, an innkeeper, was a fact necessary to be established by the plaintiff, to entitle him to recover on the first count in the declaration. It was a fact put in issue by the pleadings. The plaintiff introduced evidence tending to establish this fact. The jury were to judge of the weight and sufficiency of this evidence, and not the court. The jury, under instructions not excepted to, has found that on the occasion complained of, the defendant was the keeper of a common inn. In this view of the evidence and the case, the defendant clearly was not entitled to have his other request complied with, as it entirely ignores the liabilities of the defendant as a keeper of an inn. Neither was the defendant entitled to have this request complied with under the second count in the declaration, charging him as a bailee of the plaintiff's horse for hire, and with negligence in caring for the horse. The plaintiff's evidence tended to show that the defendant or his servant and agent, was informed by the owner of the horse that was hitched contiguous to the plaintiff's horse, that his horse had the vicious habit of kicking other horses. It was not shown that the plaintiff was made acquainted with this fact. He might have known that his horse was hitched in the barn floor among other horses, have fed it with grain, and made no objection to the defendant, his servants·or agents, because it was so hitched, and have been guilty of no contributory negligence ; while the defendant, affected with knowledge that the horse standing adjoining the plaintiff's horse was vicious, would have been guilty of actionable negligence as a bailee for hire, in placing the plaintiff's horse in such a dangerous position. The charge of the court in answer to this request was fully as favorable to the defendant as he had a right to. He could not be relieved from the exercise of ordinary care and prudence in the keeping of the plaintiff's horse, so long as he continued its keeper for hire. If the plaintiff put out his horse, and assumed the sole control, disposition, and care of it, the defendant would cease to be such

bailee, and be relieved from all responsibility in regard to the horse. If found to be an innkeeper, the charge as given only held the defendant to the use of such care as is ordinarily bestowed upon horses by innkeepers and livery-stable keepers. The law holds innkeepers to a stricter accountability for goods placed *in hospitium*—to the exercise of the highest degree of care. 2 Parsons Cont. 624, 625 ; *McDaniels* v. *Robinson*, 26 Vt. 337.

It is true this strict liability attaches only in favor of guests of the inn. The defendant claims that the plaintiff was not his guest, and claims that the court erred in not calling the attention of the jury to the fact that the plaintiff must establish that he was the guest of the defendant, as well as that the defendant was an innkeeper, in order to have the law regarding innkeepers apply. The request did not direct the attention of the court to this aspect of the case, and the exceptions state only so much of the charge as was given on the subject embraced in the request. We are not to assume that the court failed to instruct the jury that the plaintiff must establish not only that the defendant was an innkeeper, but that he was also his guest, as well as what was necessary to establish this relation, in order to entitle him to recover against the defendant as an innkeeper. Only a fragment of the charge is usually given — just so much as is necessary to present the questions reserved at the trial. The exceptions must disclose error, and not an assumption that something was omitted by the court because not included in the exceptions. The defendant may have made no question to the court or jury in regard to the plaintiff being his guest, provided he was then an innkeeper, but have assumed or treated that point as established or waived, in which case it would not have been error to have omitted to instruct the jury upon that point. It is quite as helpful to the jury and conducive to the ends of justice in jury trials, if the court confines its instructions strictly to the points on which the parties are at issue, as it is for it to confuse and distract the jury by the delivery of a masterly essay covering the entire law of the subject-matter embraced in the suit.

The result is that no error is apparent in the proceeding of the County Court, and judgment is affirmed.