WATSON S. FRENCH v. JOHN H. WARE ET AL.

WATSON S. FRENCH v. JAMES O. FOLLETT.

WINDHAM COUNTY, 1892.

Before : ROSS, CH. J., TYLER, MUNSON AND THOMPSON, JJ.

*Competency of divorced wife as witness. Presumption in favor of judgment. First assault. Charge of court.*

1.  The same rule applies to a widow and a divorced wife as to her competency as a witness for or against her former husband.

2.  She may so testify as to all matters not coming to her knowledge by reason of marital confidence and not affecting the character of her husband, as in this case to a business transaction had while the marriage relation was subsisting, in the presence of herself and several other persons, although the same transaction might bear upon the question whether the husband had been guilty of a crime.

3.  Where the trial court has refused to permit the former wife to testify to the statements of the husband as to his bodily health, this court will presume that those statements were induced by the marital relation rather than reverse the judgment.

4. If a bill of exceptions is susceptible of more than one construction, that construction will be given to it which will uphold the judgment below.

5. If the defendant, hearing the outcry of murder at his house, saw the plaintiff, who had threatened to kill him and his family, leave the house and pass rapidly along the highway, he might properly step in front of the plaintiff and command him to stop and reveal the cause of the disturbance; and if the plaintiff thereupon draws a revolver, points it at the defendant and exclaims: "Get out of my way or I will shoot you, too," that is an assault upon the defendant which he may resist to the extent of disarming the plaintiff if necessary.

6. Where several requests are made together to charge, the trial court should read all the requests for the purpose of determining in what sense a particular word was fairly used in a particular request.

7. If, in the course of an affray, the defendant has exceeded his legal right of self defence, nevertheless, upon the question of exemplary damages, the jury should be correctly instructed as to who committed the first assault.

The first of these cases was an action for assault and battery. Pleas, not guilty, with special pleas in bar. Trial by jury at the March term, 1891, TAFT, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The evidence of the plaintiff tended to show that on the 29th day of June, 1889, his wife left his own house with his child, less than two years of age, and went to the house of the defendant, John H. Ware; that she remained there until July 12, following, with the child; that upon that day he went to the house of the said defendant, took his child, and started to go to his own house, along the highway; that while so proceeding he was assaulted by the defendant, John H. Ware, in the highway, and thereupon turned into an adjoining field, when he was seized by the defendants, his child taken from him, himself bound hand and foot and subjected to various indignities.

The evidence of the defendant tended to show that the de-

fendant, John H. Ware, was overseer of the poor at that time, and that the wife of the plaintiff had come to him with her child for protection; that the plaintiff had followed her to the defendant's house, and, in the hearing of the defendant, had threatened to kill his wife and the whole Ware family if they harbored her; that on the morning in question the defendant, when returning to his house from the hay field, heard a violent uproar at his house and cries of murder, and saw the plaintiff with the child in his arms come from defendant's dooryard and pass rapidly into the highway and towards his own house; that he thereupon passed into the highway in front of the plaintiff and commanded him to halt and tell him what he had been doing at his house; that the plaintiff thereupon drew a revolver and pointing it at the defendant advanced across the highway in an angry and excited manner towards him, saying: "Get out of my way or I will shoot you, too"; that the plaintiff then turned suddenly and passed in opposite direction across the highway and towards and into an adjoining field, all the while making his threats to shoot the defendant; that thereupon the other defendants, who were the father and employés of the defendant, John H. Ware, passed into the field where the plaintiff was, seized and disarmed him and secured him until he could be delivered to the proper officer.

One Flora Fuller, who at the time of the assault was the wife of the plaintiff, but who had been subsequently divorced from him, and had at the time of the trial remarried, was present during the affray and was offered as a witness by the defendants. She was permitted to and did testify, "except as to complaints made by the plaintiff of his bodily ill health and his inability to labor previous to July 12 by reason of a lame side, heart difficulty and trouble with his bladder and kidneys." The defendants excepted to the action of the court in excluding her evidence in respect of the above matters.

The defendants requested the court to instruct the jury as follows :

" I.    If the defendant, John H. Ware, while at work in the field, saw evidence of a serious disturbance at his house, and heard the cry of ' murder' from any of the members of his family there, and saw plaintiff running away from his house under such circumstances as to indicate to him, as a prudent man, that the plaintiff was the author of such disturbance, then and under such circumstances, the defendant was justified in intercepting the plaintiff for the purpose of ascertaining the cause of such disturbance.

" II.    If, when said John H. Ware was attempting to so intercept the plaintiff in his flight, the plaintiff drew a revolver and, pointing at him, threatened to shoot him, then the plaintiff, by so doing, made an assault upon said Ware, which was the first assault, and it is immaterial whether the revolver was loaded or not, and the defendant, John H., was justified in repelling said assault, even to the extent of disarming the plaintiff.

" III.    If the plaintiff laid in wait about the premises of the said John H. Ware for the purpose of forcibly taking away his, plaintiff's child, and did so take the child away under such circumstances as to reasonably create a great disturbance among the members of said Ware's family, and while in the act of fleeing from that disturbance so created by him, and on being intercepted by defendant Ware in the manner indicated by defendant's testimony, he drew a revolver upon said Ware and threatened to shoot him, he thereby created a breach of the public peace, and said Ware had a right to arrest him at that time and to detain him and deliver him to an officer to be carried before a justice of the peace in the manner defendant's testimony shows was done, using no more force than was necessary for that purpose, and the other defendants were justified in assisting in such arrest and detention, in the manner shown by their testimony."

As to how far the court complied with these requests and what exception was taken by the defendants in that particular, the bill of exceptions stated :

" The court charged fully upon the questions of what constituted assault and battery, and as to the right of a per-

son when assaulted to defend himself, and of others to defend him and separate the combatants and preserve the peace, in a manner satisfactory to the defendants, to which no exception was taken.

"Except as covered by the charge upon the subject of self-defence as above stated, the court neglected to charge upon the subject of the requests and of the last plea, and to this neglect the defendants excepted."

The second case was an action of replevin for a mare. Plea, the general issue, trial by Jury at the September term, 1891, ROWELL, J., presiding. Verdict and judgment for the defendant. The plaintiff excepts.

The evidence of the plaintiff tended to show that on or about the 10th day of May, 1889, the mare in question was in his possession, and that the defendant forcibly took possession of her and kept possession until the institution of this suit.

The evidence of the defendant tended to show that the plaintiff had sold the mare to him for $150, which was to be paid by the payment of a note from the plaintiff to the Jamaica Savings Bank, secured by a mortgage on the mare, by the cancellation of the plaintiff's indebtedness to him after the amount of such indebtedness had been ascertained, and by the payment of the balance, if there was any, in cash; that directly after this trade the parties met, looked over their accounts, and ascertained that there was a balance due the defendant of about $20; that Flora B. French and two others were present at that time and that the plaintiff made no claim that he had not sold the mare to the defendant; that upon the following Sunday night the plaintiff went to the defendant's barn and secretly took the mare away, and that the defendant regained possession of her on or about May 10, 1889, and retained possession until this suit was brought.

The defendant introduced Flora B. French as a witness to what transpired at the time the plaintiff and defendant

looked over their accounts, as aforesaid. It was conceded that the said Flora B. was at that time the wife of the plaintiff, and living with him as his wife, she having subsequently been divorced and remarried. The court admitted the evidence subject to the plaintiff's exception.

It appeared that a prosecution for larceny had been instituted against the plaintiff for taking the mare from the defendant as aforesaid.

*Haskins & Stoddard* for the defendant.

If the facts which the defendant's evidence tended to prove were true, John H. Ware had the legal right to stop the plaintiff in the highway; and the plaintiff, by drawing his revolver, committed the first assault upon the defendant Ware. It was the right of the defendant to have the jury instructed in accordance with his first and second requests. Addison Torts, s. 798, 804; *Bishop* v. *Ranney*, 59 Vt. 318; *Re Powers*, 25 Vt. 268; *Spaulding* v. *Preston*, 21 Vt. 10; *Going* v. *Orns*, 8 Kan. 85; *May* v. *May*, 9 Neb. 22; *Bigelow* v. *Sickles et al.*, 75 Wis. 429.

The former wife of the plaintiff should have been permitted to testify. *Crook* v. *Henry*, 25 Wis. 569; *Robinson* v. *Talmadge*, 97 Mass. 171: *Litchfield* v. *Merritt*, 102 Mass. 524; *Williams* v. *Baldwin*, 7 Vt. 507; *Edgell* v. *Bennett*, 7 Vt. 586; *Smith* v. *Potter*, 27 Vt. 308; *R. and B. R. R. Co.* v. *Lincoln's Est.*, 29 Vt. 206; *Stone* v. *Bishop*, 58 Vt. 598; *Lyon* v. *Prouty*, 28 N. E. Rep. 908.

*Waterman, Martin & Hitt* for the plaintiff.

The complaints of the husband in reference to his bodily health were matters of marital confidence, to which the former wife could not be a witness. *Aveson* v. *Lord Kinnard*, 6 East 188; Phillips Ex., s. 4; *Monroe* v. *Twistleton*, Peake Add. cases, 221; *Barnes* v. *Comack*, 1 Barb. 392; *Barker*

v. *Dixie*, Rep. Temp. Hardw. 264; *Pedley* v. *Wellesley*, 3 C. & P. 568; *Bigelow* v. *Sickles*, 75 Wis. 427; 2 Bish. Mar. & Div., s. 723; *Carpenter, Exr.,* v. *Moore et al.,* 43 Vt. 394; *Cook* v. *Henry,* 25 Wis. 569; *Brock et al.* v. *Brock,* 116 Penn. 109.

One individual has no right to deprive another of his liberty for the purpose of interrogating him in reference to something which he may conjecture. *People* v. *Johnson,* 49 N. W. 870; *State* v. *McAfee,* 107 N. C. 812; *Marley* v. *Chase,* 143 Mass. 396; *Bohair* v. *Sawin,* 5 Cush. 281; *State* v. *Belk,* 76 N. C. 10; *State* v. *Dill,* 18 Atl. Rep. (Del.) 763; *Ross* v. *Leggett,* 61 Mich. 445.

If a private citizen arrests without warrant another for the commission of a felony, he takes the responsibility of proving that a felony has been committed, and if it subsequently turns out that such is not the case, he is liable, no matter in how good faith he may have acted. 2 Hawk. P. C. Ch. 12; *Phillips* v. *Trull,* 11 Johns. 486.

ROSS, Ch. J.   These cases present for consideration how far a former wife, after having obtained a divorce, can be allowed to testify against her former husband, in regard to matters occurring during their married life. They were heard together, and may be considered together upon this point.   This State has no statute upon this subject.   The right rests upon the common law.   The decisions in other States made upon the statutes of such States furnish little aid.   This right, after the disqualification of interest was removed, is governed by public policy, as held by the common law.   That policy applied alike to a widow and divorced wife.   The cases, so far as I have been able to examine them, make no distinction between the competency of the widow and of the divorced wife to testify to transactions occurring during the married life.   No substantial reason has been suggested or occurs for making any such

distinction. The relation of husband and wife is at an end
in both cases. Public policy has to do in withholding only
such matters as would be likely to invade and disturb the
confidence and domestic harmony of the marital relation.
It is said by Redfield, Ch. J., in *Smith* v. *Potter*, 27 Vt.
304 (65 Am. Dec. 199) : "It has long been settled that the
widow may testify to matters of her own knowledge, and
indeed to all matters affecting her husband's interest, unless
it involve the disclosure of matters of confidence between the
husband and wife, or to transactions affecting the character
of the husband." In substance the same doctrine is held in
*Edgell* v. *Bennett & Lowell*, 7 Vt. 534 ; *Williams* v. *Baldwin*, 7 Vt. 503 ; *R. and B. R. R. Co.* v. *Lincoln's Est.* 29
Vt. 206 ; *Carpenter* v. *Moore*, 43 Vt. 394 ; *Mathewson* v.
*Sargeant's Est.*, 36 Vt. 142 ; *Wheeler* v. *Wheeler*, 47 Vt.
637 ; *Stowe* v. *Bishop*, 58 Vt. 498. In none of these cases
has there been any attempt to define "matters of confidence." It may be difficult to frame a definition which will
be applicable to all the varying circumstances of the married
life. Doubtless some latitude must be given to the trial
court, in determining whether the offered testimony, under
the existing circumstances of the case, involves the disclosure of matters of confidence. In New Hampshire, by statute, the husband and wife are made competent witnesses for
or against each other on all matters except such as would
be a violation of marital confidence. In *Clements* v. *Marston*, 52 N. H. 38, Judge Sargent says : "And this violation
must be something confided by one to the other, simply and
specially as husband or wife, and not what would be communicated to any other person under the same circumstances."
In *Parkhurst* v. *Berdell*, 110 N. Y. 386, (6 Am. St. R.
384), it is said : "The section of the code referred to forbids not all communications between husband and wife, but
only confidential communications. What are confidential
communications? * * * They are such communications

as are expressly made confidential, or such as are of a confidential nature, or induced by the marital relation. Ordinary conversations relating to matters of business, which there is no reason to suppose he would have been unwilling to hold in the presence of any person, are not confidential." In these decisions we have carefully guarded statements, both positive and negative, of what are, and what are not, confidential communications. Their nature is so dependent upon the existing circumstances of each case that it would be difficult to enlarge or limit these statements.

There has been less attempt to define " transactions affecting the character of the husband." In *Edgell* v. *Bennett & Lovell, supra*, the widow was held competent to testify that the conveyance made by the husband was fraudulent. In 2 Starkie on Ev. 709, it is said : " Where neither of them is either a party to the suit or interested in the general result, the husband or wife is, it seems, competent to prove any fact, provided the evidence does not directly criminate the other." In *State* v. *Phelps*, 2 Tyler 374, it was held that a divorced wife was not competent to testify in support of a prosecution against her husband charging him with being found in bed with another woman while the marriage relation was subsisting. Presumably her offered testimony was directly to the crime. But in *Chamberlain* v. *People*, 23 N. Y. 85, (80 Am. Dec. 255), the husband procured a divorce for the adultery of his wife. He was then prosecuted for having committed perjury in swearing in the divorce suit that he had never had sexual intercourse with her, although she had had a child born during the marriage, and she was allowed to testify in the prosecution that she had never had sexual intercourse with any person other than him. The notes to this case show that it has been quite generally followed. The decision is placed upon the ground that the fact to which she testified did not betray marital confidence. It was

not, as in *State* v. *Phelps*, direct evidence of the crime charged, but very potent indirect evidence.

*Babcock* v. *Booth*, 2 Hill 181 (38 Am. Dec. 578), was an action by an administrator to recover property claimed to have been transferred by the husband to hinder and delay his creditors, and it was held that his widow could testify to any facts which she did not learn from her husband in trust and confidence.  See also *Dickerman* v. *Graves*, 6 Cush. 308 (53 Am. Dec. 1) and note. In a note to *State* v. *Boyd*, 2 Hill S. C. 298, (27 Am. Dec. 376), this statement is made. " Where neither husband nor wife is a party interested, they will be allowed to give evidence, though their testimony clashes; provided the evidence of neither charges the other with an indictable offence; *Commonwealth* v. *Patterson*, 8 Phila. 609; and indeed one of the married persons will be allowed to give evidence the only tendency whereof is to discredit the other; *Ware* v. *State*, 55 N. J. 553; *Cornelius* v. *State*, 12. Ark. 782; but this is sometimes held differently; *Roach* v. *State*, 41 Tex. 261." When the marriage is dissolved by death or divorce, no reason exists why the survivor should not be competent to testify as fully as in a suit between third parties, although the testimony might bear against the other party to the dissolved marriage.  From these decisions it is fairly deducible that a widow or divorced wife is competent to testify to any facts or acts occurring during the married life which did not come to her knowledge in confidence growing out of the marital relation, although they may tend to show the husband had committed a fraud or to discredit him as a witness or indirectly to show that he has been guilty of a crime; but that she is incompetent to testify to any facts or transactions which directly show the husband has been guilty of a crime, such as that she saw him in the act of committing the crime. The law assumes that no husband will commit a crime in the presence of his wife, except in the confidence induced by

the marital relation. Hence from public policy the widow or divorced wife is incompetent to testify to such acts unless committed against her person. Public policy does not protect him when the crime is against the person of the wife. Crimes are usually committed in secret. The wife might have no other proof than her own of the husband's crime against her, and her liberty and life would be at his mercy if she could not testify.

I. In the first of these cases the divorced wife of the plaintiff was called by the defendants and testified " except as to complaints made by the plaintiff of his bodily ill health, and his inability to labor previous to July 12th by reason of a lame side, heart difficulty and trouble with his bladder and kidneys." The complaints might have been made by the plaintiff relying upon the confidence induced by the marital relation. We must presume they were and that the trial court so found, rather than to presume the contrary and thereby raise error in the ruling of that court. But his inability to labor previous to July 12th was a fact to be observed, whether it came from a lame side, heart difficulty or the other causes specified. The divorced wife was competent to testify to any such fact which she observed which is not the commission of a crime. It is contended by the plaintiff that this clause, commencing with " and his inability to labor " etc., is connected so that it means and complains of his inability to labor, etc. The sentence is capable of this construction. When a sentence of exceptions reasonably may bear two constructions this court is bound to adopt that one which will uphold the ruling of the trial court. On this principle we find no error in this ruling.

II. In the second of these cases this witness was allowed to testify against the exception of the plaintiff to facts observed by her during the marriage relation, which tended to contradict the testimony of the plaintiff in regard to the same facts and so tended to discredit the plaintiff as a witness.

This was permissible, as we have shown from the authorities cited, none of the facts testified to being direct evidence of the commission of a crime by her then husband.

III.  In the first case it was material to determine whether the plaintiff or defendant, John H. Ware, on the occasion of the disturbance committed the first assault.  The plaintiff's testimony was that Ware first assaulted him as they met in the highway.  The testimony of the defendants was that Ware, knowing of the plaintiff's threats to kill his whole family, hearing a disturbance at his house, and cries of murder, and seeing the plaintiff passing rapidly into the highway and towards his own house, came into the highway a short distance in front of the plaintiff and commanded him to halt and tell him what he had been doing at the house; and that the plaintiff thereupon drew a revolver and, pointing it at Ware, advanced in an angry, excited manner toward him, saying " get out of my way, or I will shoot you, too."  On this statement of the defendant's testimony, John H. Ware did not then make an assault upon the plaintiff, but the plaintiff did upon him, and his declaration implied that he had already shot someone at Ware's house.  If this testimony was found true Ware did not attempt to use, nor make any show of using any force to halt the plaintiff.  Words never amount to an assault.  They frequently characterize accompanying acts.  The defendants' requests, one and two, were addressed to the facts as claimed by their testimony.  The first requested the court to charge, if the claimed facts were found established, " the defendant was justified in intercepting the plaintiff for the purpose of ascertaining the cause of the disturbance "; and the second, that if the plaintiff, when John H. Ware was attempting so to intercept him, drew a revolver and pointing it at him threatened to shoot him, the plaintiff made the first assault upon Ware, and Ware would be justified in repelling the assault, even to the extent of disarming him.  This is the substance of the two

requests.    The only doubtful words in them are " intercept "
and " intercepting."    Intercept frequently means no more
than to come or place one's self between a person and the
place towards which he is going to make an inquiry or an-
swer a question.    When applied to the facts, as shown by the
defendant's testimony, this is the natural meaning rather
than that of seizing such person when on his way.    But the
third request makes clear that only this kind of interception
was intended as it says, " on being intercepted by defend-
ant Ware, in the manner indicated by the defendant's testi-
mony."    Counsel have the right to assume that the court
will read all the requests whether it complies with them or
not.    If in several he uses a word which has several mean-
ings and defines it in one, he is presumed to use it with the
same meaning, when applied to the same state of facts in
his other requests.    But taken in the connection in which it
is used, without its definition in the third request, we think
these words mean no more than that Ware stepped in front
of the plaintiff and between him and the place where he was
apparently going and commanded him to halt and tell him
what he had been doing at his house.    This he had a right
to do.    On hearing the outcry of murder and seeing him
hastening away, Ware was under a moral duty to learn
what the plaintiff had been doing at his house, without re-
gard to whether he had the right to arrest the plaintiff with-
out a warrant.    On his evidence he did not then and there
attempt to arrest him, or to use any force against him.    A
party has the right to frame his requests to charge with ref-
erence to the facts as claimed by his evidence, and, if con-
taining correct statements of law, have them complied with.
If the jury found the facts in accordance with the defendant's
evidence, these requests contained correct statements of the
law, applicable to the then position of the parties.    They
do not attempt to cover whether the defendants, after the
plaintiff had retreated from his assault on John H. Ware

and was attempting to flee across the fields, had the right to pursue him and treat him as they did. Yet, as bearing upon the damages, especially the exemplary damages, it was important to have the jury correctly determine whether defendant John H. Ware or the plaintiff committed the first assault in the highway. The only compliance with these requests was a correct charge of what constituted an assault and battery, and of the right of a person assaulted to defend himself and have others help him. · The last was a part compliance with the second request. But the important question, which party was the aggressor there in the highway, it touched upon only in a general way and left the jury to decide whether on the facts as claimed by the defendants, the stepping of John H. Ware into the highway in front of the plaintiff and addressing the inquiry to him was not an assault. In an admitted state of facts it is for the court to declare the law rather than the jury. We do not think the charge given was a full and fair compliance with these requests, and that the defendants were entitled to have these requests complied with. If the jury found the facts of what occurred in the highway established, as the defendant's evidence tended to establish them, the defendants had the right to have the court tell the jury that John H. Ware did not then commit any assault but that the plaintiff did. The third request assumes the existence of facts of which the exceptions disclose no evidence, and the court correctly declined to comply with it. Neither was there any sufficient evidence to support defendants' fourth plea. The court was not called upon to charge with reference to it. The charge is to be adapted to the case made by the evidence, and not to a case only partly supported by evidence.

*In the first case judgment is reversed and the cause remanded, and in the other case judgment is affirmed.*

*Thompson J., dissents.*

Dissenting opinion by

THOMPSON, J.   I am unable to concur in the conclusion of a majority of this court, that the court below erred in its action with respect to the defendant's first and second requests to charge in the case of *French* v. *Ware et als.*

The evidence of the plaintiff tended to show that on the 12th day of July, A. D. 1889, he resided in Townshend, and about a quarter of a mile southerly of defendants Ware; that early in the forenoon of that day he went to the house of the Wares and took a child of his, less than two years of age, and walking in the road started for his own house. The plaintiff's then wife, with the child, had left the plaintiff's house on the June 29th prior, and had remained at Ware's house until the 12th day of July following. It further tended to show that when within a short distance from his own house he was assaulted by defendant John H. Ware, in the highway; that he thereupon turned and went into the field adjoining, when he was seized by the defendants and two others, his child taken from him and he bound hand and foot and kept for about two hours, a part of the time lying in the sun, and then shaded by an umbrella; that he was struck and kicked and severely injured by the defendants; that he was then passed into the custody of others who took him to Townshend village, a mile and one quarter distant, where criminal proceedings were instituted against him for an assault, being armed with a dangerous weapon, with intent to kill defendant John H. Ware.

The evidence of the defendants tended to show that defendant, John H. Ware was overseer of the poor of Townshend for the year 1889, and that on the 29th day of June, in the night time, the plaintiff's wife and child came and sought refuge at the house of the defendants, Ware; that the plaintiff followed her there, and in the hearing of both the defendants Ware threatened that he would kill his wife

and the whole Ware family if they harbored his wife; that some days thereafter, plaintiff, while at Townshend village, made violent threats against John H. Ware and family, of which threats John H. had been informed prior to July 12th; that plaintiff's wife and child were at the Wares' house on the morning of July 12th, and that John H. Ware, while returning from the hay field, heard a furious uproar at his house and cries of " murder," and saw the plaintiff with a child in his arms coming from defendant's, Ware's, dooryard, pass rapidly into the highway and towards his own house, whereupon John H. called upon the defendants Twitchell and Jennison, who were his employés and at work in the hayfield, to come to his assistance; that John H. Ware passed into the highway a short distance in front of the plaintiff and commanded him to halt and tell him what he had been doing at his house; that the plaintiff thereupon drew a revolver from his coat pocket, and pointing it at Ware, advanced across the highway in an angry and excited manner towards him, saying, " get out of my way or I will shoot you, too;" that plaintiff then turned suddenly and passed in an opposite direction across the highway, and towards and into an adjoining field; that defendants Twitchell and Jennison came from the hayfield in response to said call and they, together with two others and Joseph B. Ware, defendant, and father of John H. Ware, and John H., followed plaintiff in the adjoining field, the plaintiff continuing his threats to shoot Ware, where they seized and disarmed him of the revolver, and his wife took the child from his arms, and then defendants threw him upon the ground; that plaintiff struggled and fought severely, and to hold him secure until they could turn him over to a proper officer, they procured ropes and straps and bound his legs and arms; that neither of the defendants kicked, struck or did him any injury; that defendant John H. sent for the constable of the town, who soon arrived in company with a deputy sheriff

and a justice of the peace, and the constable took the plaintiff to Townshend village, where he was criminally proceeded against as before stated.

The record further discloses that there was no evidence tending to show that the plaintiff, when at the house of the Wares on the morning of the affray, said or did anything except to take his child and walk away with it.

The defendants' requests were as follows :

" 1.   If the defendant, John H. Ware, while at work in the field, saw evidence of a serious disturbance at his house, and heard the cry of ' murder ' from any of the members of his family there, and saw plaintiff running away from his house under such circumstances as to indicate to him, as a prudent man, that the plaintiff was the author of such disturbance, then and under such circumstances the defendant was justified in intercepting the plaintiff for the purpose of ascertaining the cause of such disturbance."

" 2.   If, when said John H. Ware was attempting to so intercept the plaintiff in his flight, the plaintiff drew a revolver, and pointing at him threatened to shoot him, then the plaintiff, by so doing, made an assault upon said Ware, which was the first assault, and it is immaterial whether the revolver was loaded or not; and the defendant, John H., was justified in repelling said assault, even to the extent of disarming the plaintiff.

" 3.   If the plaintiff laid in wait about the premises of the said John H. Ware for the purpose of forcibly taking away his, plaintiff's child, and did so take the child away under such circumstances as to reasonably create a great disturbance among the members of said Ware's family, and while in the act of fleeing from that disturbance so created by him, and on being intercepted by defendant Ware in the manner indicated by defendant's testimony, he drew a revolver upon said Ware and threatened to shoot him, he thereby created a breach of the public peace, and said Ware had a right to arrest him at that time, and to detain him and deliver him to an officer to be carried before a justice of the peace, in the manner defendant's testimony shows was done, using no more force than was necessary for that purpose, and the

other defendants were justified in assisting in such arrest and detention, in the manner shown by their testimony."

We are all agreed that there are no facts disclosed by the exceptions which entitle the defendants to a compliance with their third request. I have quoted it because the majority of the court in their opinion refer to it for the purpose of inferring a meaning for the words "intercepting" and "intercept" as used in the first and second requests, which in their opinion requires a reversal of the judgment.

The verdict and judgment were against the defendants jointly. They were not jointly liable except for a joint assault upon the plaintiff. It is to be presumed that the jury were so instructed. The evidence of both the plaintiff and the defendants showed that the only joint assault, if one were made, was in the field after the plaintiff left the highway, and that if the plaintiff was assaulted in the highway, John H. Ware was his sole assailant there. If the first and second requests are assumed to embody a sound proposition of law, they are only applicable to an assault by John H. Ware alone, and not to a joint assault by him and the other defendants, and as the conviction is joint, the refusal to charge as requested worked no harm, as on this assumption might have been the case had John H. Ware been found guilty and the other defendants acquitted.

But I think the judgment below is clearly sustainable on other grounds. The trial proceeded on the theory that plaintiff claimed to recover against all the defendants for a joint assault.

If the first and second requests, in view of all the facts disclosed by the record, are fairly susceptible of a construction which would justify a refusal to comply with them, then they are to receive such construction, and there is no error even though the court did not charge as requested. *McCann v. Hallock*, 30 Vt. 233; *Cram, Admr.*, v. *Cram*, 33 Vt. 15. The majority of the court recognize and apply this well es-

tablished principle in disposing of the exception in the case at bar, taken to the rejection of the testimony of the plaintiff's former wife. On this ground, I think there was no error.

The first and second requests were so framed as to apply to the whole case as made by the evidence of both plaintiff and defendants. The entire language of these requests was unrestricted by reference to anything which would impress upon any word in them a meaning other than its ordinary, natural meaning as applied to the whole case. The word "intercepting" in the first request and "intercept" in the second, was not applied to a particular and limited part of the evidence, as was the word "intercepted" in the third request. As the three requests were drawn the court had a right to understand that the first and second requests were framed with a view of presenting a complete defence to the case against the defendants, as made by all the evidence, and that the third request was drawn to present a defence to a possible phase of the case which the defendants assumed to exist, but which the record fails to show did in fact exist. The very terms of the third request limited the use of the word "intercepted" in it to a particular assumed phase of the case, and, confessedly, did not attempt to include all the facts which the evidence in the case tended to prove. Without doubt the court so understood the requests. In such case there is no presumption of law or of fact that a word is used alike in all of a series of requests. Error in the court below is not to be predicated upon presumptions, but upon facts which appear affirmatively, not argumentatively upon the record. All reasonable intendments are to be made to sustain its rulings, but they are not to be reversed upon presumptions. *Foster's Exrs.*, v. *Dickerson*, 64 Vt. 233, (24 Atl. Rep. 253).

According to the leading dictionaries, like Richardson's, Webster's, Worcester's and the Century dictionary, a natu-

ral and ordinary meaning of " intercept " is to take or seize by the way or before the end is reached.

The plaintiff's evidence tended to show that while he was pursuing his way home along the highway, John H. Ware intercepted him by assaulting him in the highway, and by pursuing him into the field when he fled there, and there, with the aid of the other defendants, assaulting and binding him hand and foot, thus actually and effectually taking and seizing him by the way on his attempted journey home.

The evidence standing thus, the language of the first and second requests not being restricted in either of them to the evidence relating to any particular phase of the case, but being general in its nature and fairly applicable to the whole case, I think the court below properly understood and assumed that the words " intercepting " and " intercept " in these requests were used in the sense of to seize or take the plaintiff by the way in the manner the evidence showed he was seized, taken, intercepted, by the defendants and prevented thereby from pursuing his way home. It certainly cannot be successfully contended that these two requests, in view of the evidence, were not fairly susceptible of this construction by the court below when they were made, and· that is sufficient for the purposes of this discussion. Give them this construction, and it follows that the defendants were not entitled to a charge in accordance with either of them.

The first request, giving it this construction, is based upon the proposition that under the facts disclosed, John H. Ware, a private person, might have supposed that a felony had been committed, and therefore he had a lawful right to intercept or apprehend without a warrant, the defendant, if he might have fairly supposed him to be the felon. This is putting it as favorably for the defendants as this request warrants, for it will be noticed that it does not embody the element that the defendant John H. Ware, as a reasonably

prudent man, had reason to believe and did believe that a felony had in fact been committed at his house by the plaintiff. The second request under this construction assumes that under a state of facts such as the evidence tended to prove, it is an assault in law for a person to resist by force an attempt by a private person without a warrant, to intercept or apprehend him.

In discussing the right of a private individual to arrest a person without a warrant, Cooley says: " If one without this protection were to arrest on his own judgment, he ought to be able when called upon, to show that his judgment was warranted.   To do this he should show either :

" 1.   A felony actually committed ;  and

" 2.   Facts that have come to his knowledge which justify him in suspecting the person arrested to be the felon ; or

" 3.   A felony being committed and an arrest to stay and prevent it.

"This seems to be the least that could be required; the fact of felony, and personal knowledge of the guilt of the particular person, or reason for suspecting him; and if one errs in these particulars, it is better that he be left to take the consequences, than that they be visited upon an innocent party who is improperly arrested." Cool. Torts, (2nd Ed.) 202 ; Hammond's N. P. 136 ; Big. Cas. Torts 284. It is apparent that the record does not disclose such a state of facts as would be necessary to justify the arrest of the plaintiff by a private individual without a warrant. I understand all the judges are agreed in this.   No authorities need be cited to sustain the proposition that a person has the right to resist with all necessary force an unlawful attempt by a private individual to arrest him.

Again, there is another view in which, to my mind, it is apparent the defendants were not entitled to a compliance with the first and second requests.   A request must be so worded that the court can comply with it in the identical

language in which it is made, if the court elects to thus in-
struct the jury.  If it would be error to comply with the re-
quest by reading it to the jury and saying to them that it was
a correct statement of the law applicable to the case, then it
is not error to ignore it altogether.  Now I apprehend
that the majority of the court will not deny that these two
requests, in view of the evidence in the case, were suscep-
tible of the construction which I have given them, and that
the jury might have so construed and understood them, if
they had been instructed in the language of them.  An ex-
ception to such a charge taken by the plaintiff would have
entitled him to a new trial in case the verdict had been
against him, for this court could not say but that the jury
had found against him by putting just this construction upon
the charge.  *Wilson* v. *Blake*, 53 Vt. 305 ; *Snyder* v. *La-
framboise*, Breese (Ill.) 343, (12 Am. Dec. 187).

In *State* v. *Hopkins*, 56 Vt. 250, this court said : " When
instructions are asked they should be precise and certain to
a particular intent, that the point intended to be raised may
be distinctly seen by the court, and that error, if one be made,
may be distinctly assigned.  *United States* v. *Bank of the
Metropolis*, 15 Pet. 406.  The true object of submitting a
point to the court is to obtain a clear and reliable instruc-
tion to aid the jury in the formation of an intelligent ver-
dict.  The court should decline to receive a point when it is
so obscurely worded as to confuse rather than to enlighten
the jury.  *McKinney* v. *Snyder*, 78 Penn. St. 497." Neither
the court below nor this court even read the requests in
*State* v. *Hopkins*, *supra*, because they were so " multi-
tudinous " but under the view now entertained by the major-
ity both courts should have examined them for the purpose
of extracting from all of them a meaning which might have
made one of the forty-five requests good.    .

In *Vaughan* v. *Porter*, 16 Vt. 266, Redfield, J. says : " In
regard to all writtten requests, the court are never bound to

regard them in their charge, unless they are couched in such terms as to be *sound* to the *full extent*." In *Rea.* v. *Harrington*, 58 Vt. 181, the court say : " As repeatedly held, a request must be wholly sound in order to make an exception to a refusal to comply with it available." In *State* v. *Hopkins*, *supra*, the court held that the requests were calculated to mislead and confuse the jury, and were properly refused. Indefinite, ambiguous, or misleading instructions should not be given and it is not error to refuse them. *Sumner* v. *State*, Blackf. 579, (36 Am. Dec. 561) ; *Southern R. R. Co.* v. *Kendrick*, 40 Miss. 374, (90 Am. Dec. 332) ; *State* v. *Benham*, 23 Iowa 154, (92 Am. Dec. 417) ; note to *Strohn* v. *Detroit etc., R. R. Co.*, 99 Am. Dec. 123–128. It is incumbent on a party seeking an instruction to put his request for it in such clear, precise, intelligible, and unambiguous form as to leave no reasonable ground for a misapprehension by the jury as to its correct meaning. Where there are several requests, each must stand or fall by itself. The court has a right to examine and dispose of each, without regard to any other. It is not bound to read a series of requests for the purpose of finding in one something by which it may construe into another a meaning which it would not have if standing alone. Even if the court should be disposed so to do, it is not proper or competent for it to do it. Under the authorities cited both the first and second requests could have been properly refused by the court on the ground that as the evidence stood they were ambiguous and likely to be misunderstood by the jury.

There was a sharp conflict between the evidence introduced by the plaintiff, and that introduced by the defendants, as to what occurred from the time plaintiff and John H. Ware met in the highway to the end of the affray. The court below might well have refused to comply with these requests on the ground that they were an attempt to get the court to give special prominence to a particular piece or class

of testimony by calling the attention of the jury specially to it, which, as Ross, J., aptly said in *Reed* v. *Reed*, 56 Vt. 492, " is a perversion of the legitimate office of requests, an endeavor to get the court to argue the case for the party making such requests." In *Stevens* v. *Dudley*, 56 Vt. 158, and *Ashley* v. *Hendee*, 56 Vt. 209, it was held that such requests were properly refused, and in *Stevens* v. *Dudley*, the court say by Ross, J., that " such requests are always mischievous in spirit and tendency ; have no proper place in a jury trial, and are to be condemned unqualifiedly." To the same effect are *Thornton's Exrs.* v. *Thornton's Heirs*, 39 Vt. 122, *Foster's Exrs.* v. *Dickerson*, *supra*, and *Com.* v. *Broadbeck*, 124 Mass. 319. In the last named case the evidence was conflicting. The defendant testified in his own behalf, and if his evidence was true, he was entitled to an acquittal. Upon special request by the defendant to charge that if the jury believed his testimony he could not be convicted, the trial court refused to so instruct them, to which the defendant excepted. The court gave general instructions as to what would constitute the offence charged, and left it for the jury to say, on all the evidence, whether it had been committed. The opinion of the supreme court in full, in disposing of this exception, was : " The instructions were sufficient. The defendant had no right to an instruction on a part of conflicting evidence." Under the rule adopted in *Com.* v. *Broadbeck*, the charge as given fully met the requirements of the law.

If it were true that the plaintiff first assaulted John H. Ware, as suggested in the second request, the defendants, without regard to the construction put upon " intercept " in that request, were not entitled to a compliance with it. If Ware was thus assaulted by the plaintiff, he would have the right to defend himself, using no more force than was reasonably necessary to make his defence effectual. His right to disarm the plaintiff would thus depend upon its being

necessary to his self defence, while being assaulted by him. But the defendants did not claim, nor did their evidence tend to prove, that John H. Ware made any attempt to disarm the plaintiff, when he made the alleged assault upon Ware in the highway by pointing a pistol at him, but on the contrary their evidence tended to show, and they so claimed, that they did not disarm nor attempt to disarm the plaintiff, or use force of any kind against him, until he had desisted from his alleged assault upon John H. Ware and had fled into the field, where they pursued him, and seized him, still fleeing, and disarmed and bound him hand and foot.   By their own claim and showing, they were the pursuers and sole aggressors at the time the attempt to disarm the plaintiff was made and at the time when he was in fact disarmed.   Hence this request was not applicable to the facts in the case as claimed by the plaintiff or the defendants.   The plaintiff's evidence, so far as the exceptions disclosed, did not tend to show that Ware attempted to disarm him in the highway.   It only tended to show that Ware committed some kind of an assault upon him there.   The contrary not appearing by the record, we should presume that the evidence on this phase of the case was such as to require the refusal of this question, if it did not appear affirmatively on the defendant's own showing, as we have seen that they were not entitled to such an instruction as the case then stood.   *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233, (24 Atl. Rep. 253).   As before stated, nothing is to be implied against the ruling of the court bebelow.

Had the evidence tended to show that Ware attempted to disarm, or did disarm the plaintiff in the highway, at the time Ware claimed he was being assaulted by the plaintiff with the pistol, yet the defendants would not have been entitled to a charge in the language of the second request, for the reason that it asserted an unqualified right in Ware to disarm the plaintiff, whether the use of such force was nec-

essary for his self-defence or not. "The law abhors the use of force, either for attack or defence, and never permits its use unnecessarily." A person may not use force to defend himself from injury if he can otherwise protect himself. *Howland* v. *Day*, 56 Vt. 318; *Simkins* v. *Eddie*, 56 Vt. 612.

To find what the majority of the court conceive to be tenable grounds for reversing the judgment below, they are forced to give the words, " intercepting " and " intercept " in the first and second requests, an unusual, and as it seems to me, a novel meaning, in view of the manner in which the three requests are drawn, and of all the facts of the case as disclosed by the record. They are also forced to adopt a rule for the construction of requests, under which no court can successfully try jury cases, where there are requests to charge, drawn to meet varying phases of the case arising from the conflict of testimony. However, giving the first and second requests the construction put upon them by the majority of the court, I then insist that the record does not show reversible error, for the reason that the court gave all the instructions which the case required: The language of the exceptions is that " the court *charged fully* upon the questions of what constituted an assault and a battery, and as to the right of a person when assaulted to defend himself and of others to defend him and separate the combatants and preserve the peace in a manner *satisfactory to the defendants*, to which no exception was taken." It is said in the majority opinion, that this " was a part compliance with the second request. But the important question, which party was the aggressor there in the highway, it touched upon only in a general way and left the jury to decide whether on the facts as claimed by the defendants, the stepping of John H. Ware into the highway in front of the plaintiff, and addressing the inquiry to him, was not an assault." Why assume this? Why reverse a case on a conjecture of this kind, for it is wholly a matter of conjecture con-

tradicted by the exceptions, which show affirmatively that the court charged the jury to the satisfaction of the defendants, fully on every conceivable phase of the case as made by the evidence of both plaintiff and defendants ; charged fully upon what constituted *an assault*, what a battery, and fully as to the *right of self defence*. The jury under such charge must have understood that no mere words constitute an assault, and that if John H. Ware simply stepped in front of the plaintiff in the highway and asked him in language either polite or peremptory to explain what he had been doing at his house, or to tell him the cause of the disurbance there, and did no more than this, he did not commit an assault by thus making the inquiry. If the jury did not so understand, it was not the fault of the trial court. The majority of the court assume that the jury may have understood that such an inquiry, so made, was in law an assault by John H. Ware, and make this the crucial point upon which they base their decision to reverse. This assumption is based upon the further assumption that on this branch of the case the charge was so general, so meager, so abstract and unintelligible, that the jury might have been misled on this point. In *Armstrong* v. *Noble*, 55 Vt. 428, it was well said by Ross, J.: " This court would commit a grave error if it should reverse a judgment of the county court upon a *conjecture*." So hold the authorities. See *Foster's Exrs.* v. *Dickerson, supra*, and the cases there cited. In *Clary* v. *Willey*, 49 Vt. 55 ; this court held that it is not to be assumed that the court below omitted to properly instruct the jury on material points, because the exceptions do not show that such instruction was given.

A fair construction of the exceptions in this case is that the court fairly, fully and in an intelligible way, instructed the jury as to the law applicable to the questions raised by the evidence. Indeed, no question arises as to the construc-

tion to be given to the exceptions for they state affirmatively that the court thus instructed the jury.

Had the charge to the jury been meager, or uncertain and misleading, or silent, on the points upon which the majority of the court propose to reverse, without doubt it would have been made a part of the record by the excepting party, that its deficiency in this respect might appear of record.

At the trial below, the defendants were satisfied with the charge as given upon the subjects enumerated, including what constitutes an assault, and the right of self defence and its exercise, and the right to preserve the peace, and this court may now be well satisfied that the jury were properly instructed upon all the issues of the case.

*I would affirm the judgment.*