## GRAVES v. GRAVES.

Opinion delivered June 28, 1902.

1. WITNESS—SURVIVING WIDOW.—A widow is a competent witness against the executor of her deceased husband, to prove that the husband employed plaintiff, in her presence, to perform certain services, as her knowledge of the facts sworn to was not obtained through confidential communication from her husband. (Page 543.)

2.  CONTRACT—COMPENSATION.—Where it was proved that deceased hired plaintiff to wait on him in his last sickness, and told him that he would hire a hand to work plaintiff's crop in his place, but it was not shown that the amount to be paid such farm hand was fixed as the measure of plaintiff's compensation, it was not error to refuse an instruction that the plaintiff could not recover a greater amount than would be necessary to hire a hand to work his crop during the time he waited on the deceased. (Page 545.)

3.  EVIDENCE—DECLARATION AGAINST INTEREST.—Proof that deceased, during his last illness, said that he had hired plaintiff to nurse him is admissible in a suit against his executor to recover compensation therefor. (Page 545.)

Appeal from Howard Circuit Court.

WILL P. FEAZEL, Judge.

Affirmed.

STATEMENT BY THE COURT.

Appellee seeks to recover the sum of $100 of the executors of the estate of Nat Graves, Sr., deceased, for services rendered in nursing him during his last illness.

The appellant resisted the payment of the claim, denying liability.

The appellee proved by Rebecca Graves, the widow of Nat Graves, as follows: "Mr. Graves hired plaintiff to wait on him in his last sickness. Plaintiff was making a crop at his father's place nearby, and was reluctant to come and stay with Mr. Graves. The deceased told him in my presence to come anyway, and he would hire a hand to work in the crop in place of plaintiff. Thereupon plaintiff came, and stayed almost continuously until Mr. Graves died, June 12, 1898. While there he waited on Mr. Graves, who was so weak he had to be moved about in bed. Plaintiff would go after the doctor, and otherwise render himself useful in attending Mr. Graves' wants, both day and night. The work was necessarily very taxing on him. I do not know what this work was worth. I consider it worth $100." This testimony was objected to on the ground that the witness was the wife of Nat Graves, Sr., at the time the matters occurred to which she testified. The objection was overruled, and exceptions duly saved.

Other witnesses testified that plaintiff attended Nat Graves, the deceased, for about two months in the capacity of a nurse.

Witnesses were permitted, over the objection of appellant, to testify that they had heard Nat Graves say, during his last illness, that he had hired appellee to nurse him. This was said in the absence of appellee.

There was testimony on behalf of the executors to the effect that they had paid to the father of appellee at his request $35, which he said was the amount necessary to hire a hand to work in the crop of plaintiff, appellee, while he was nursing Nat Graves. There was proof that the value of a farm hand to work in a crop was about $15 per month.

The father of appellee testified that he received $35 from the executors, but said that plaintiff got none of it, and that the executors did not pay the money to hire a hand to work appellee's crop.

The court, over the objection of appellant, gave the following: " If the jury believe from a preponderance of the evidence that the plaintiff went to the house of the deceased and at his request, and waited on and cared for him during his last illness, you will find for the plaintiff what you believe from the evidence his services were reasonably worth." And refused, at appellant's request, the following: "The jury are instructed that the plaintiff, Addison Graves, cannot recover a greater amount than would be necessary to hire a hand to work his crop during the time the evidence shows him to have worked for Nat Graves, Sr., in his sickness.

*W. C. Rodgers,* for appellants.

It was error to admit the evidence of the widow of Nat Graves, Sr. Sand. & H. Dig., § 2915; 2 Esp. 716; 6 N. J. L. 366; 2 Ala. 339; 2 Nott & McC. 374; 3 Blatchf. 146; 7 T. R. 112; 6 T. R. 680; 11 Gratt. 321-3; 2 Strobh. 1094; 13 Ark. 295; 1 Barb. 392, 395; 6 Pa. Chy. 516, 568; 1 Strobh. 317, 323. Where the husband or wife for any reason is not competent to testify in an action, the other is likewise incompetent. 22 Ark. 143; 119 Ill. 548; 93 Wis. 45; 121 Ind. 436; 130 Ill. 448; 153 Ill. 625; 168 Ill. 488. It was error to admit evidence of declarations made in the absence of plaintiff. 161 Pa. St. 115; 160 Mass. 68; 93 Ga. 104; 25 Ore. 260; 101 Ala. 213; 47 Fed. 39; 16 S. W. 535; 79 N. W. 1016.

WOOD, J., (after stating the facts.) First. A widow is a competent witness against the executor of her deceased husband,

unless her knowledge of the facts was obtained through confidential communications from her husband. The statute is declaratory of the common-law rule. The statute provides: " The following persons shall be incompetent to testify:

\*     \*     \*     \*  .  \*     \*     \*     \*     \*     \*

"Fourth. Husband and wife, for and against each other, or concerning any communication made by the one to the other during the marriage, whether called as a witness while that relation subsists or afterwards; but either shall be allowed to testify for the other in regard to any business transacted by the one for the other in the capacity of agent." Sand & H. Dig., § 2916.

"The great object of the rule," says Mr. Greenleaf, "is to secure domestic happiness by placing the protecting seal of the law upon all confidential communications between husband and wife; and whatever has come to the knowledge of either by means of the hallowed confidence which that relation inspires cannot be afterwards divulged in testimony, even though the other party be no longer living." 1 Greenl. Ev. § 337.

The facts proved by the widow were in no sense confidential communications, and, death having ended the marriage tie, she was not excluded by either the letter or spirit of the statute. *Pratt* v. *Delavan,* 17 Ia. 307; *Denbo* v. *Wright,* 53 Ind. 226; *Floyd* v. *Miller,* 61 Ind. 224; *Griffin* v. *Smith,* 45 Ind. 366; *Mercer* v. *Patterson,* 41 Ind. 440; *Beveridge* v. *Minter,* 1 C. & P. 364; *Jackson* v. *Barron,* 37 N. H. 494; *Smith* v. *Potter,* 27 Vt. 304; *French* v. *Ware,* 65 Vt. 338; *Stuhlmuller* v. *Ewing,* 39 Miss. 447; 1 Greenl. Ev. § 338; *Stein* v. *Weidman,* 20 Mo. 17; *Cornell* v. *Vanartsdalen,* 4 Pa. St. 364; *Saunders* v. *Hendrix,* 5 Ala. 224; *McGuire* v. *Maloney,* 1 B. Mon. 224; *Caldwell* v. *Stuart,* 2 Bailey, 574.

In the Missouri and Mississippi cases cited *supra* the witness was called for the estate of her deceased husband. But under our decisions that could not lessen their authority. *Collins* v. *Mack,* 31 Ark. 684; *Watkins* v. *Turner,* 34 Ark. 663.

Mr. Rodgers, in his excellent work on Domestic Relations, at section 285, under the title "When Survivor May Testify," correctly announces the law as follows: "It is no invasion of the policy of the law protecting confidential information possessed by husband and wife for him or her to testify as to any facts which may have come under observation during the marriage, where the information sought to be elicited by such evidence comes to the

knowledge of one or the other, not by reason of the confidential relation, but from observation or otherwise, not as a family secret or in mutual confidence.

Second. The testimony of Mrs. Graves shows that her husband promised plaintiff (appellee) that he would hire a hand to work in plaintiff's crop while the plaintiff was nursing him; but it does not show that the amount to be paid such farm hand was fixed as the measure of plaintiff's compensation. There was, therefore, no error in appellant's request for instruction.

Third. The declarations of deceased were against interest and admissible. 1 Greenl. Ev. § 147.

Affirmed.