In the Matter of the Estate of CHARLES VAN ALSTINE, Deceased; A. C. EWING and ISABELLE VAN ALSTINE, Appellants, v. CHARLES GORDON VAN ALSTINE and HELEN EMILY VAN ALSTINE by DORA S. VAN ALSTINE, their Guardian *ad litem*, Respondents.

### No. 1388.    (72 Pac. 942.)

1. **Wills: Probate: Contest: Evidence: Admissibility: Witness Interested.**

    Revised Statutes of Utah 1898, section 2908, authorizes the appointment of a guardian ad litem. Section 3348 provides that, in actions prosecuted or defended by persons expressly authorized by statute to act, costs shall be chargeable only to the persons represented, unless the court directs them to be paid by the representative for mismanagement or bad faith in the action. *Held*, that this "contingent" liability for costs does not render a guardian ad litem contesting the probate of a will on behalf of two minor children of testator incompetent to testify for the minors as to facts equally within the knowledge of the guardian and testator, under Revised Statutes Utah 1898, section 3413, subdivision 3, disqualifying a person "directly" interested in a suit for or against an executor, administrator, etc., of a deceased person from testifying to facts equally within the knowledge of the deceased and witness.

2. **Same: Witness: Divorced Wife: Competency.**

    Revised Statutes Utah 1898, section 3414, subdivision 1, provides that a wife can not be examined for or against her husband without his consent, nor can either, during marriage or afterward, without consent of the other, be examined as to any communication made by one to the other during marriage. *Held*, not to disqualify a divorced wife from testifying, in a contest involving the probate of her former husband's will, as to his condition when under the influence of liquor during the time she was his wife, the statute being intended to exclude only confidential communications, and not facts obtained from observation.

26 Utah 13

3. **Same:  Opinion as to Sanity.**

In a will contest, testator's divorced wife having testified that after the divorce she conducted testator's business under power of attorney, and had seen him frequently and noted his .mental condition both when sober and when under the influence of liquor, she rendered herself competent to express her opinion as to his sanity.

4. **Same:  Evidence:  Insufficiency of Objections:  Appeal**

Where the record does not disclose that a specific objection to certain evidence relied on was made at the trial or called to the attention of the trial court, the objection will not be considered on appeal.

5. **Same:  Evidence:  Effect of Drug:  Proper.**

In a will contest, the divorced wife of testator testified for contestants as to his mental condition when under the influence of various drugs which he was in the habit of taking, among them chloral, which she stated he tried.  Proponent objected to the testimony as to the effect of chloral, on the ground that it was not shown that the testator had any thereof at the time of the execution of the will.  *Held,* that the objection was properly overruled.

6. **Same:  State of Mind:  Letter Admissible.**

Where, in a will contest, it was shown that testator was an habitual drunkard, and that he had devised four-fifths of his estate to a sister and only one-fifth to his two minor children, the court properly admitted in evidence, to show the condition of testator's mind, a letter written by him to his divorced wife, seventeen days before his death, in which he regretted having been drunk and expressed solicitude for the welfare of his children.

7. **Same:  Evidence:  Cross-Examination:  Limit.**

Where, in a will contest, the files and decree in a divorce proceeding granting testator's wife a divorce were introduced merely for the purpose of making the wife a competent witness for contestants as to communications with testator subsequent to the divorce, the court properly refused to permit proponent to cross-examine the wife as to whether testator had conveyed property to her subsequent to the divorce, though the record in the divorce proceeding showed the amount of alimony awarded her.

8. **Same:  Witness:  Physician:  Competency.**

Under Revised Statutes Utah 1898, section 3414, subdivision 4, providing that a physician or surgeon can not, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to

enable him to prescribe or act for the patient, physicians who attended testator before his death are disqualified from expressing, in a contest over testator's will, their opinion of his sanity at the time of its execution.[1]

**9. Same: Order of Arguments.**
Revised Statutes Utah 1898, section 3791, provides that in contests over the probate of a will the petitioner and others interested may jointly or separately answer contestant's grounds, traversing or otherwise obviating or avoiding the objection. *Held*, that where the answer of the petitioner traverses the grounds relied on by contestants, they have the burden of sustaining the issues thus formed, and are entitled to the opening and closing arguments.

ROLAPP, District Judge, dissenting.

(Decided June 30, 1903.)

Appeal from the Third District Court, Salt Lake County.—*Hon. S. W. Stewart*, Judge.

Petition by A. C. Ewing, named as executor, for the probate of the will of Charles Van Alstine, deceased. Contest by Charles G. Van Alstine and Helen E. Van Alstine, children of the deceased. From a judgment denying the probate of the will, the petitioner and another appealed.

AFFIRMED.

*A. B. Sawyer, Esq., Andrew Howat, Esq.*, and *Geo. Y. Wallace, Jr., Esq.*, for appellants.

*Messrs. Pierce, Critchlow & Barrette* for respondents.

BASKIN, C. J.—On May 15, 1901, Dr. A. C. Ewing, named therein as executor, filed an instrument purporting to be the last will and testament of Charles Van Alstine, deceased, with the clerk of the district court,

---

[1] Munz v. Railroad Co., 25 Utah 220; 70 Pac. 852.

and a petition for the probate thereof. On the 12th day of June, 1901, Charles Gordon and Helen Emily, children of said Charles Van Alstine, deceased, by Dora S. Van Alstine, their guardian, filed their opposition to the probate of said will, alleging as the ground of their opposition thereto that the said Charles Van Alstine was habitually addicted to the excessive use of opium, stimulants, and intoxicating drinks, and at the time of the execution of the will did not have the mental capacity to make a will or dispose of his property by will. To this, A. C. Ewing filed his answer, denying the incapacity of the testator to make the will. On November 16, 1901, the contestants made application to the court that the court frame an issue of fact and submit it to a jury, and on the 27th day of November, 1901, the court made an order submitting to a jury the question "whether the deceased was of sound and disposing mind and memory at the time he made and executed the will." On January 27, 1902, the trial was had to a jury, the Honorable Samuel W. Stewart, judge, presiding, and the jury thereafter found that the deceased was not of sound and disposing mind and memory at the time of the execution of the will. The court adopted the findings of the jury, and denied the probate of the will. From that judgment this appeal is prosecuted.

1. At the trial, Dora S. Van Alstine, the guardian ad litem, was called as a witness for the minors. The proponent objected to her competency as a witness for the minors. The proponent objected to her competency as a witness on the ground that, under the provisions of section 3348 of the Revised Statutes, if judgment should be rendered against the contestants of the will, and the court should believe that the contest was not made in good faith, costs might be assessed against her, and she, therefore, had a direct interest in the event of the suit, and was disqualified as a witness under subdivision 3, section 3413, Revised Statutes 1898. The objection was overruled, and an exception taken. Section 3348 of the Revised Statutes is as follows: "In

an action prosecuted or defended by an executor, administrator, trustee of an express trust, or a person expressly authorized by statute, costs may be recovered as in actions by and against a person prosecuting or defending in his own right; but such costs must, by the judgment, be made chargeable only upon the estate, fund, or party represented, unless the court directs the same to be paid by the plaintiff or defendant personally for mismanagement or bad faith in the action or defense." Section 2908, Revised Statutes 1898, authorizes the appointment of a guardian ad litem. Subdivision 3, section 3413, provides that: "A party to any civil action, suit, or proceeding, and any person directly interested in the event thereof, and any person from, through, or under whom such party or interested person derives his interest or title or any part thereof, when the adverse party in such action, suit, or proceeding claims or opposes, sues or defends as guardian of any insane or incompetent person, or as the executor or administrator, heir, legatee, or devisee of any deceased person, or as guardian, or assignee, or grantee, directly or remotely, of such heir, legatee, or devisee as to any statement by, or transaction with, such deceased, insane, or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent, or deceased person, unless such witness be called to testify thereto by such adverse party, so claiming or opposing; suing or defending in such action, suit, or proceeding." By the express terms of said subdivision, the disqualification of persons as witnesses on the ground of interest is limited to such as have a direct interest in the event of the "civil action, suit, or proceeding." Unless, therefore, Mrs. Van Alstine has such an interest, she was not disqualified as a witness. To be directly interested is the same thing as having a direct interest. A direct interest is the opposite of an indirect interest, and excludes the idea of contingency. A direct interest is defined in Winfield's Words and Phrases, p. 195, as fol-

lows: "A direct interest is one which is certain, and not contingent or doubtful." In Black's Law Dictionary it is defined as follows: "A direct interest, such as would render the interested party incompetent to testify in regard to the matter, is an interest which is certain and not contingent or doubtful." At common law a contingent liability for costs dependent upon the result of the suit disqualified a witness, but, by the express terms of the subdivision referred to, the common-law rule has been changed, and the disqualification restricted to a direct interest in the event of the suit or proceeding. The remote, doubtful, and contingent liability of Mrs. Van Alstine for costs is not a direct interest, and therefore the court did not err in overruling the objection of the proponent.

2. The said Dora S. Van Alstine was formerly the wife of the said Charles Van Alstine, deceased. She was married to him on the 14th day of August, 1892, but procured a divorce on the 13th day of May, 1899, and, having testified to the habitual intoxication of the deceased, she was asked the question, "What was the condition that he was in when he was under the influence of liquor?" To this question the proponent objected, on the grounds which, as stated, are as follows: "That the same is incompetent, irrelevant, and immaterial, and for the further reason that Mr. Van Alstine was dead, and at the time she was asked to testify as to his condition she was his wife, which brings the question within the prohibitive clause" of subdivision 3, section 3413, and subdivision 1, section 3414, Revised Statutes. Upon the objection being overruled and an exception taken, the witness answered that "he was a crazy man."

The objection based upon said subdivision 3 has already been passed upon. The only other objection relied upon under the foregoing exception is based upon subdivision 1, section 3414, which is as follows: "A husband cannot be examined for or against his wife, without her consent, nor a wife for or against her husband,

without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other.'' The proponent contends that said subdivision includes all communications and information imparted by acts or acquired by observation, and that the question and answer objected to falls within its prohibition. Section 497 of the Revised Statutes of Indiana provides that ''the following persons shall not be competent witnesses,'' and subdivision 6 thereof is as follows: ''Husband and wife, as to communications made to each other.'' Rev. St. 1881, p. 93. The statute of the State of Washington on the subject is identically the same as our own. In the case of Stanley v. Stanley, 112 Ind. 143-145, 13 N. E. 261, the wife of her deceased husband, as a witness, after referring to an occasion when her husband visited her, was asked what his condition was, and answered, over the appellant's objection, that he was intoxicated. The court, in the opinion said: ''It is now contended that this testimony falls within the inhibition of section 497, Revised Statutes 1881, which renders husband and wife incompetent to testify as to communications made to each other. The testimony is not controlled by the ruling in Perry v. Randall, 83 Ind. 143. The husband's condition as to being intoxicated, unless it should appear to have been specially confided to the wife, in the absence of others, cannot be regarded as in the nature of a confidential communication. Especially must this be so when the subject under investigation implies that the condition and conduct of the husband were an imposition upon the wife. Smith v. Smith, 77 Ind. 80; Schmied v. Frank, 86 Ind. 250. There was no error in admitting the testimony.'' In the case of Sackman v. Thomas, 64 Pac. 819-827, the Supreme Court of the State of Wash-

ington, under section 5994, 2 Ballinger's Ann. Codes & St., which provides "that a wife shall not be examined for or against her husband without the consent of the husband, nor shall either, during marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during marriage," held that the testimony of a married woman that the property in controversy was purchased in part with money given to her by her husband was not inadmissible as a communication between the husband and the wife, since the statute refers only to confidential communications induced by the marriage relation, and not to conversations in regard to business transactions. In the case of Poulson v. Stanley, 122 Cal. 655, 55 Pac. 605, 68 Am. St. Rep. 73, it is held that "the delivery of a deed from a husband to a wife is not a privileged 'communication' within the meaning of subdivision 1 of section 1881 of the Code." That subdivision is the same as subdivision 1, section 3414, Revised Statutes Utah, before quoted. See 3 Deering's Code, p. 621. Under section 3642 of the Iowa statute (see Iowa Code 1873, p. 565), the provisions of which are the same as ours on the subject under consideration, in Giddings v. Iowa Savings Bank, 104 Iowa 677, 74 N. W. 21, a wife was permitted to testify, over the objection of the opposing party, to threats made by the officers of the bank against her husband, in her absence, but which were communicated to her by him. In the opinion it is said: "The gist of this testimony was simply that the husband told his wife what had been said to him by defendant's officers. Its admission did not contravene section 3642, Code 1873, which forbids husband or wife divulging confidential communications made by one to the other." Section 2820, Revised Statutes (1889) of Missouri, contains a proviso "that nothing in this section shall be construed to authorize or permit any married woman while the relation exists, or subsequently, to testify to any admissions or conversations of her husband, whether made to herself or to third parties." In the

case of Yowell v. Vaughn, 85 Mo. App. 206, the defend-ant was charged with having alienated the affections of plaintiff's wife and of persuading her to sue for and obtain a divorce. The defendant denied these allega-tions, and alleged that plaintiff's wife separated from him and obtained a divorce on account of her husband's violent and cruel treatment. On the trial the divorced wife was asked what her husband's conduct toward her had been during the time she lived with him. Objec-tions thereto were made and sustained by the court be-low. The appellate court, in its opinion, said: "To strike or abuse his wife, to use violence toward her per-son, has never yet been held to be 'confidential com-munications.' The error in refusing answers to these questions, designed evidently to show that the plaintiff had been abusive to his wife and violent in his treatment to her, for which cause she separated herself from him, was prejudicial error, requiring a reversal of the judg-ment by us." It the celebrated case of United States v. Guiteau, 1 Mackey 498, it was held that "a divorced wife might testify that she saw no indications of in-sanity exhibited by her husband during their associa-tion." 3 Jones, Ev., sec. 756. In 19 Am. and Eng. Ency. of Law (1 Ed.) 153, it is stated that, in the United States, the disqualification of the wife continuing after the death of her husband seems to be limited to private conversations, and non-confidential information is not privileged." In 3 Jones, Ev., sec. 756, it is stated that: "After the close of the marriage relation, either party may testify to matters which took place during the mar-riage, unless such testimony involves the disclosure of matters of confidence. . . . Nor does the rule apply to such facts as came to the knowledge of the witness during the marriage by means equally accessible to other persons, and not disclosed in conversations with the other spouse, or to matters that came to the knowl-edge of the spouse before the marriage or after the separation." In French v. Ware, 65 Vt. 338-347, 26 Atl. 1096, the court, after reviewing a number of cases,

said: ''When the marriage is dissolved by death or divorce, no reason exists why the survivor should not be competent to testify as fully as in a suit between third parties, although the testimony might bear against the other party to the dissolved marriage. From these decisions it is fairly deducible that a widow or divorced wife is competent to testify to any facts or acts occurring during the married life which did not come to her knowledge in confidence growing out of the marital relation, although they may tend to show the husband had committed a fraud, or to discredit him as a witness, or indirectly to show that he had been guilty of a crime.''

I have made diligent research, but have not found any case which holds that provisions like those contained in subdivision 1, section 3414, Revised Statutes Utah 1898, exclude, as contended by the proponent, all communications and information imparted by acts or acquired by observation. On the contrary, all of the cases which I have been able to find, and have before cited, limit the exclusion to confidential communications only. While the exclusion of confidential communications between husband and wife is supported by public policy, there is no reason why the surviving wife or husband should be excluded from testifying, in the maintenance of legal rights, to non-confidential communications, and to any facts the knowledge of which was not acquired in confidence through the marriage relation. In the light of the reason of the exclusion, and in view of the authorities upon the subject, the provisions of the statute in question were intended to exclude only confidential communications. Knowledge of the deceased husband's habits and mental conditions was obtained by his wife by observation, and not from anything communicated to her in confidence by her husband. The contention of the proponent under consideration is therefore untenable. But if it were tenable, the judgment should not be reversed on that ground, unless the objection urged by the proponent to the testimony of the witness, set out under the next head, is tenable.

3.  Immediately after the expression of the aforesaid opinion of the witness, the following occurred in her examination:  Q.  "What would he do or say?  A. He used the vilest language.  He would threaten to kill me and the children.  After the divorce he came to the house frequently.  I did his business, and had a power of attorney.  Q.  What did Mr. Van Alstine say to you when he was sober concerning his mind and condition during the time he was in these drunken fits, after the decree of divorce?  (The proponent objected to this question on the ground that the same was incompetent, irrelevant, and immaterial, and for the further reason that the testimony of Mrs. Van Alstine is precluded under section 3413 of the Revised Statutes of Utah 1898. The court overruled this objection, and the proponent excepted.)  A. He said his mind was a perfect blank when he was drunk; that he knew nothing of what he did.  He made these statements to me very often when he was sober.  I saw him quite often after the divorce, nearly every day when he was in town.  Several times he talked with me concerning the appointment of a guardian for him.  In the spring of 1899 I don't think he was drinking.  He commenced to drink again, I think, in the latter part of 1900.  He swore and used vile language. and threatened to break the doors down, and to kill us.  I think he was there three or four times on that drunk, and acted the same each time.  During the holidays of 1900 and 1901 he quit drinking, and talked rationally a good many times.  He told me he needed somebody competent to attend to his affairs, and that I ought to have it done for my protection.  He was drunk again some time in January, 1901.  He said he would dynamite the house.  After that he told me he did not know why his mind should be turned against us when he was drunk; that he did not have any such feelings when he was sober.  I saw him right along until April.  He was sober part of the time, I think.  Altogether he had four bad times between January and March.  These lasted four or five days.  He took milk

to, quiet his nerves, and bromidia, which was the only drug he could take without exciting him. I am sure he was drunk once a month from January, 1901, on, and his condition was just the same each time, and he said and did the same things. The last time was early in April. I could usually tell when he was about to go on a drunk. He was nervous and excitable, very white, and his eyes had a peculiar stare. Q. Mrs. Van Alstine, from your observation of him, state what, in your judgment, was the man's mental condition? (The proponent objected to this question on the ground that the same was incompetent, irrelevant, and immaterial, and not a proper question, she not being competent to testify. The court overruled this objection, and the proponent excepted.) A. I think Charley was mentally unsound, incompetent, crazy most of the time." The first objection to this testimony urged in proponent's brief is that "Mrs. Van Alstine was not an expert upon the question of the mental condition of the deceased, and therefore was not presumed to have any more knowledge or skill upon that subject than had the jury to whom the question was being tried." It is a well-settled rule of practice that the party objecting must at the trial lay his finger on the precise point of the objection upon which he relies. The proponent did not, at the trial, specifically object on the ground that the witness was not an expert. But as it is conceded that the witness was not, a specific objection on that ground, if it had been made and sustained, could not have been avoided by additional testimony. We have carefully considered the objection, and, while the decisions on the subject are conflicting, the preponderance of those in the United States favor the admission of the opinion of non-experts as to sanity. Schouler on Wills (2 Ed.), after referring to the adverse decisions on the subject, in section 201, states that: "On the other hand, the great preponderance of our American decisions favors admitting generally the testimony of persons, professional or unprofessional, as to matters of personal ob-

servation bearing upon the testator's sanity, without attempting to discriminate closely between facts and opinions. And in most states an unprofessional witness never was, or else is no longer, confined to a recital of facts from which the jury must draw unaided an inference of sanity or insanity, but he may give his opinion touching the testator's sanity as the result of his own observation and familiarity"—and cites numerous cases in support of the text in note 1. In 2 Taylor on Evidence, section 366, it is also stated that the admission of such testimony is supported by the "weight of authority." Section 102, 1 Underhill on Wills. p. 140, makes the same statement. The witness' knowledge and observation of her husband's habits and mental condition, after the divorce, disclosed by the testimony, rendered her competent, under the authorities just cited, to express an opinion as to his sanity.

The only other objection urged in the proponent's brief to the opinion expressed by the witness is that "the question that was put to her did not confine her opinion as being based upon what she had testified to before the jury, nor did she in her answer so. confine it. After having stated the facts to the jury, counsel should have asked her what was her opinion as to the mental condition of the deceased, based upon the facts that, she had related to the jury." It does not appear that this specific objection was made or the court's attention directed to it at the trial. If it had been, counsel for the contestants could have readily avoided it by changing the form of the question. It cannot, therefore, under the well-established rule before referred to, be considered on this appeal.

4. The witness, Mrs. Van Alstine, having further testified that "there were times, of course, when he was thoroughly himself. He wasn't crazy all of the time. The slightest quantity of whisky would set him perfectly wild, during all the time I knew him. Any drug except bromidia excited him. Morphia made him delirious, almost insane. Besides morphia, he tried

chloral"—the following occurred: "Q. What effect had that? (The proponent objected to the question because there was no testimony showing that he ever had any chloral at the time the will was executed, or was in any way under the influence of it. The court overruled this objection, and the proponent excepted.) A. It would excite him, and make him just as wild as anything . . . Laudanum had the same unfortunate effect. In 1895, Mr. Van Alstine took the Keeley cure, and he stayed sober about three months, I think. When he was drunk he would say that he would destroy his property so that we would have nothing; when he was sober he said it was always for his children." The objection of the proponent was properly overruled.

5. The following letter from the decedent to his divorced wife was introduced in evidence, over the objection of the proponent, to-wit: "Salt Lake City, April 10, 1901. Dora: Forgive me. But was feeling so bad from the grip that I drank more than I ought to have done, and am sorry for it, but have made no bargain with any one in regard to my business, and will not until I see you again. Will always think, Dode, that you are the best woman that I ever met, and I cannot help but think so. For we both have enemies, but let us work together for the sake of our children. Charles Van Alstine." The decedent left as his only heirs and next of kin a son and daughter, whose ages were, respectively, six and four years. By his will he bequeathed to his sister, Isabelle Van Alstine, the sum of $4,000, as a first claim on his estate after paying the expenses of his last sickness and funeral and of the administration of his estate. Subject to the above bequest, he left the residue of his estate to his infant children. The value of his whole estate, after paying the expenses of his last sickness and the legacy to his sister, is only a little above $1,000, so that his children were left but a small share of the whole estate. The letter objected to was corroborative of the previous testimony relating to the habitual intemperance of the deceased,

and showed the solicitude and regard which, seventeen days before his death, he had for the interests of his infant children. The condition of the mind of deceased, in respect to his children, shown by the regard and solicitude which he expressed in the letter for them, in view of the other evidence in the case, was material. The trial judge, in overruling the objection of the proponent, in express terms admitted the letter in evidence to show the condition of the decedent's mind. The objection, we think, was properly overruled.

6. The witness, Mrs. Van Alstine, having stated that she had obtained a decree of divorce from the deceased, the files and decree in the divorce suit were thereupon introduced in evidence. This decree showed the amount of property awarded to the witness as alimony. On cross-examination she was asked "whether the deceased had not conveyed to her other real estate and mining stocks prior to the commencement of the divorce proceedings." To this question the contestants objected, and the court sustained the objection. The files and decree were the best evidence of the divorce, and the time it was obtained was material, because the letter and other conversations between the witness and the deceased, after the divorce, testified to by her, in the absence of a dissolution of the marriage, would have been incompetent. The evident purpose of their introduction was not to show the amount of the alimony awarded, for that was an immaterial matter. The objection was therefore properly sustained.

7. Drs. Ewing and Keogh, who attended the deceased as his physicians in his last sickness, and during which he made the will in controversy, were called by the proponent, and asked to express their opinion as to the sanity of the deceased at that time. The contestants objected, on the ground that the attendant physicians were disqualified under the provisions of section 3414, subdivision 4, Revised Statutes 1898, which is as follows: "A physician or surgeon can-

not, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." In the case of Munz v. Salt Lake City R. R. Co., 25 Utah 220, 225, 70 Pac. 852, the same question as in this case was involved, and Mr. Justice BARTCH, in the opinion, said: "The statute in question, being remedial, should receive a liberal interpretation, and not be restricted by any technical rule. When it speaks of information, it means not only communications received from the lips of the patient, but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observation of his appearance and symptoms"—and cited the following authorities in support thereof: 3 Jones, Ev., section 777; Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770; Railroad Co. v. Mushrush, 11 Ind. App. 192, 37 N. E. 954, 38 N. E. 871; Keist v. Railroad Co. (Iowa), 81 N. W. 181; Weitz v. Railroad Co., 53 Mo. App. 39; Iron Co. v. Cummings (Colo. App.), 46 Pac. 875; Raymond v. Railway Co., 65 Iowa 152, 21 N. W. 495; Griffiths v. Railroad Co., 71 N. Y. Supp. 406. The objection was properly sustained.

8. It is contended that the court erred in permitting, over the objection of the proponent, the attorneys of the contestants to open and close the argument before the jury. It is provided in section 3791, Revised Statutes 1898, that in a contest like the one in question the "petitioner and others interested may jointly or separately answer the contestant's grounds, traversing or otherwise obviating or avoiding the objections." Under the provisions of this section the burden of sustaining, before the jury, the issues formed by the answer, was upon the contestants, and therefore they had the right to open and close the argument. The rule which generally prevails in the United States is that the burden of proof is upon the contestant. 1 Underhill on Wills, sec. 86.

The other objections made by the proponent are of minor importance, and furnish no grounds for a reversal of the judgment. Upon a careful review of the evidence, we are of the opinion that the verdict of the jury was correct.

It is therefore ordered that the judgment be affirmed, with costs.

BARTCH, J., concurs.   ROLAPP, District Judge, dissents.