## NEW YORK LIFE INS. CO. v. MASON.

(Circuit Court of Appeals, Ninth Circuit. April 4, 1921.)

### No. 3523.

1. **Witnesses ⊃148—Beneficiary can testify to conversation with insured in suit against company.**

   Rev. Codes Mont. § 7891, cl. 4, as amended by Laws 1913, c. 41, making incompetent as witnesses parties to an action against any person or corporation as to the facts of direct transactions or oral communications between the proposed witness and the deceased, does not exclude the testimony of the beneficiary under an insurance policy, in an action to recover the amount of the policy, to a conversation with the insured before his death.

2. **Witnesses ⊃192—Statute excluding "communications" of wife refers only to confidential communications.**

   Rev. Codes Mont. § 7892, forbidding testimony by a wife without her husband's consent as to any communication made by one to the other during the marriage, though not limited expressly to confidential communications, should be construed as applying only to such communications, since there is no public policy excluding such testimony further than necessary to guard the marital relation.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Communications.]

3. **Witnesses ⊃192—Communications by husband testified to by wife held not "confidential communications."**

   In an action on a life insurance policy brought by the wife of insured, in which the defense was suicide, testimony by the wife to conversations with her husband shortly before and immediately after the shooting, showing that the husband was not contemplating suicide and that the shooting was accidental, are not "confidential communications" and were not inadmissible under Rev. Codes Mont. § 7892.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Confidential Communication.]

⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Insurance �köp659 (2)—Evidence showing state of mind held admissible to rebut defense of suicide.**

In an action on a life insurance policy, where the defense was suicide, evidence by a friend of insured as to the statements of insured showing absence of motive to commit suicide, and showing a reason for the purchase of the gun with which the wounds were inflicted, was admissible to rebut the defense.

**5. Evidence ⊫473—Testimony that a person appeared ignorant of operation of gun held not an opinion.**

In an action on a life insurance policy, where the defense was suicide, testimony by a witness who had sold to insured the gun with which the fatal injury was inflicted, and who stated that insured did not know how to operate the pistol and related in detail the instructions he gave insured, that insured appeared to be wholly ignorant as to the operation of the gun, was not an expression of opinion, but merely an abbreviated way of relating the facts as he elsewhere had stated them.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by Evelyn E. Mason against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Walsh, Nolan & Scallon, of Helena, Mont., and Fletcher Maddox, of Great Falls, Mont., for plaintiff in error.

George A. Judson and H. R. Eickemeyer, both of Great Falls, Mont., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error, as the beneficiary of a policy of insurance on the life of her deceased husband, brought an action against the plaintiff in error to recover on the policy. The defendant pleaded that the deceased had committed suicide before the expiration of the first two insurance years. The policy contained the provision that in the event of self-destruction during that period, "whether the insured be sane or insane," the insurance should be equal only to the sums paid as premiums. The deceased died as the result of two pistol wounds from a pistol which he held in his hand. The defendant contended that the wounds were voluntarily inflicted. The plaintiff contended that they were accidental. The shooting occurred in the basement of the house in which the deceased lived with his wife and child. The wife and child were absent at the time. The plaintiff testified that on returning to the house and hearing the voice of her husband calling her, she went to the basement, where she found him lying on a bed; that there was propped up near the head of the bed an envelope containing money and bills amounting to $745; that her husband rose from the bed and with her assistance walked upstairs to their bedroom; that a doctor was summoned and the deceased was taken to a hospital, where he died a few hours later. The defendant, assuming the burden of proving its defense so pleaded, introduced in evidence the envelope above mentioned, and which had been theretofore put in evidence at the coroner's inquest and filed in the of-

fice of the clerk of the District Court as a part of the official record of the coroner's report. The defendant also introduced in evidence the record of certain questions propounded to the plaintiff at the inquest, and her answers thereto. This testimony related to the identification of the envelope, the money contained therein, and certain statements of the deceased to the plaintiff.

The defendant having rested, the plaintiff testified in her own behalf concerning statements made by the deceased to her. She testified that on the morning of the day in which he was shot, he had said that he would go down town "and get the gun and some shirts, and get the money that he had coming." She testified further that she had asked him to get the gun. Objection was interposed to evidence of oral communications between the husband and wife, on the ground that under the Montana statutes the plaintiff was forbidden to testify to the same by clause 4 of section 7891, as amended by the act of the Legislature of 1913 (Laws 1913, c. 41), and section 7892. The first of these statutory provisions provides:

"The following persons cannot be witnesses: * * * (4) Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against any person or corporation, as to the facts of direct transactions or oral communication between the proposed witness and the deceased agent, of such person or corporation, and between such proposed witness and any deceased officer of such corporation."

The second provides as follows:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: (1) A husband cannot be examined for or against his wife, without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

[1] We agree with the court below that the statute first mentioned had no application to the case. The witness was not asked to detail transactions or oral communications that she had had with a deceased party to the action or with the deceased agent of such person or corporation, or deceased officer of such corporation. As to section 7892, the court below ruled that inasmuch as the defendant had, by proving a portion of the coroner's record, introduced some testimony as to what had taken place between the plaintiff and the deceased, it had waived its right to invoke the statute. Thereupon the plaintiff testified that she had asked her husband to get the gun because some one had broken in the back door, and some one was around the house that night, and that he had promised to get it. Subject to the same objection, the plaintiff testified that her husband told her, after he was shot, that he had sold his mining stock in consequence of their intention to buy a house nearer to town. She further testified:

"He told me, 'I bought that gun, and it shot me twice,' and he told me not to touch it; that it shot repeatedly; that it might shoot me. He told me he did not mean to shoot himself, and said, 'Why would an accident happen like this?' and said that he did not think he was shot seriously."

There were other similar statements detailed by the witness. The ruling of the court in admitting that testimony over the said objections advanced thereto is assigned as error.

[2] The statute of Montana, section 7892, has not been construed by any decision of the Supreme Court of that state. The defendant directs attention to the fact that the statute differs from that of several of the states in that the inhibition is not limited expressly to confidential communications, but extends to all communications between husband and wife. That difference, however, is not believed to be material. In 4 Wigmore on Evidence, p. 3263, it is said:

"In many jurisdictions this fundamental element of confidence is not expressly named in the statutory enactment; it privileges 'any communication.' Some courts, however, have construed this phrase in the spirit of the correct principle, and have implied a limitation to confidential communications. Others have literally applied the words of the statute, which is thus allowed to create an intolerable anomaly in the law of privileged communications. No justification for such an extension of the privilege has ever been attempted, and it must be supposed that this broad statutory phrasing originated in inadvertence. It is proper enough to maintain (as already noticed) that all marital communications should be presumed to be confidential until the contrary appears; but if the contrary appears, there is no reason for recognizing the privilege."

In 40 Cyc. 2354, it is said:

"The rule under discussion excludes only testimony as to confidential matters, and leaves the witness competent to testify as to any matters as to which his or her knowledge is not acquired through the confidence of the marital relation, and the disclosure of which by the witness involves no breach of marital confidence, although such matters relate to the transactions of his or her spouse."

We have examined a large number of cases in which the reasonable and just doctrine so expressed has been applied to statutes identical with that of Montana, and we find that the weight of authority sustains that view of the meaning of such a statute. In Sexton v. Sexton, 129 Iowa, 487, 105 N. W. 314, 2 L. R. A. (N. S.) 708, construing a similar statute, the court said:

"There can be no reason arising out of public policy, or otherwise, requiring that every word spoken between husband and wife shall be privileged, irrespective of the presence in which spoken or the subject or occasion thereof. And, within our observation, no court has ever gone so far as to so hold. The spirit of the rule as enforced at common law, and, within our understanding, the meaning to be gathered from the statute, is that the privilege shall be construed to embrace only the knowledge which the husband or wife obtains from the other, which, but for the marriage relation and the confidence growing out of it, would not have been communicated, or which is of such nature or character as that, to repeat the same, would tend to unduly embarrass or disturb the parties in their marital relations. It is the marital communication, then, that is sought to be protected, and this is so because there can be no purpose of public policy to interfere, except to guard and foster the marital relation."

Other cases in point are Sackman v. Thomas, 24 Wash. 660, 64 Pac. 819; Van Alstine's Estate, 26 Utah, 193, 72 Pac. 942; Graves v. Graves, 70 Ark. 541, 69 S. W. 544; State v. Snyder, 84 Wash. 485, 147 Pac. 38; Ward v. Oliver, 129 Mich. 300, 88 N. W. 631; State

v. Pearce, 87 Kan. 457, 124 Pac. 814; Moseley v. Eakin, 15 Rich (S. C.) 324, 339; Macon Ry. Co. v. Mason, 123 Ga. 773, 51 S. E. 569; Stanley v. Stanley, 112 Ind. 143, 14 N. E. 261.

[3] The testimony which the plaintiff gave as to communications from her husband were not, within the meaning of the statutes, confidential disclosures or communications, the publication of which would betray conjugal confidence and trust or tend to produce family discord. Clements v. Marston, 52 N. H. 38; Parkhurst v. Berdell, 110 N. Y. 386, 18 N. E. 123, 6 Am. St. Rep. 384; Greenlee v. Kansas City Casualty Co., 192 Mo. App. 303, 182 S. W. 138. The view which we have taken of the construction of the statute renders it unnecessary to discuss the question of waiver or estoppel, upon which the court below admitted the testimony.

[4] The witness Frederickson, a friend of the plaintiff and the deceased, testified that a few days prior to his death the deceased said "he was going to sell his stocks he had and was going to buy city property with his money from now on. * * * He said he might sell the old home and build a home closer on account of his wife didn't want to stay out there alone. It was too far out." He testified further that he had heard the plaintiff say to the deceased, "George, you will have to get me a gun if you want me to stay out at that house," and that the deceased had said to the witness that he would have to have a gun because his wife did not like to stay in the house alone unless she had a gun. Objection was made to this testimony as immaterial, irrelevant, and also as self-serving. The testimony was offered for the purpose of showing absence of motive to commit suicide. "Where the defense is that the insured committed suicide, any legal evidence is admissible which tends to throw light on the circumstances and causes of the insured's death, such as evidence as to the condition or state of mind of the insured before his death." 25 Cyc. 940; Sharland v. Washington Life Ins. Co., 101 Fed. 206, 41 C. C. A. 307. The defendant had introduced testimony tending to show that the death of the deceased was suicidal, that on the day of his death he had collected a considerable sum of money, and had bought a pistol. In rebuttal of the inference deducible from that testimony, it was competent for the plaintiff to introduce evidence tending to show that very shortly before his death the deceased had no intention to commit suicide. Messersmith v. Knights of Pythias, 31 N. D. 163, 153 N. W. 989. In Fidelity Mut. Life Assn. v. Miller, 92 Fed. 63, 34 C. C. A. 211, it was held that a letter written by the insured to his wife a day before his death was properly admitted to rebut evidence which tended to show that he was contemplating suicide.

[5] The witness who sold the pistol to the deceased was asked by plaintiff's counsel whether or not the deceased "appeared to be wholly ignorant as to the operation of the gun which you showed him," to which the witness said: "I should say so, yes." The testimony was objected to as incompetent. It is now contended that it was reversible error thus to admit evidence of the opinion of the witness. The witness had already testified that the deceased did not know how to operate the pistol, and added: "I showed him all I knew about it." On

cross-examination he related in detail the instructions he gave, the loading, the filling of the magazine, the cocking of the hammer, the operation of the safety device, and the manner of holding and shooting the pistol. It is not strictly accurate to say that in stating that the deceased appeared to be wholly ignorant of the operation of the gun the witness was but expressing an opinion. What the witness said was but an abbreviated way of relating the facts as he elsewhere stated them, and we think it was clearly admissible. See State v. Cooley, 19 N. M. 91, 140 Pac. 1111–1117, 52 L. R. A. (N. S.) 230, and cases there cited.

The judgment is affirmed.