**KANSAS CITY LIFE INS. CO. v. JONES et al.**

**JONES v. JONES.**

District Court, S. D. California, C. D.
Oct. 29, 1937.

Alfred J. Smallberg, of Los Angeles, Cal., for respondent and cross-complainant Ethel Jones.

Mark F. Jones, W. L. Engelhardt, and A. G. Divet, all of Los Angeles, Cal., for respondent and cross-defendant Flora S. Jones.

NETERER, District Judge.

Flora S. Jones was named beneficiary in an insurance policy issued upon the life of A. B. Jones, her son. Upon his death, his wife, to whom he was married after the issuance of the policy, claimed the deceased, for a good consideration, agreed to designate Ethel Jones, the wife, as the beneficiary. Claim is also made by Ethel Jones for the proceeds of the policy for payment of premiums upon the policy in issue for a number of years prior to the death of the deceased insured; the deceased agreeing that these payments should be a lien upon the proceeds of the policy. The insurance company, upon these claims, by interpleader, deposited the fund in this court.

Flora S. Jones, mother of the deceased, as beneficiary in the policy when it was issued in 1923, had a contingent interest which became absolute upon the death of the insured on January 23, 1936, subject only to the reserved power of the insured to change the beneficiary. The change could be made by the exercise of the reserved power according to the rules or conditions of the insurance company indorsed on the policy. Lovinger v. Garvan (D.C.) 270 F. 298, and cases cited on page 300.

Change of beneficiary may also be made by a valid contract where the new beneficiary for a consideration given to the insured is to be made the beneficiary, and, if the change of beneficiary was not made at death of insured, the promisee may compel specific performance of the reserved power by decree in equity. In such case equity will disregard formal steps and consider the promisee as the beneficiary. Lovinger v. Garvan, supra, and cases cited. An enforceable contract creates an enforceable right of the promisee to the status obtained if the insured had exercised his reserved power during life.

The filing of this interpleader and payment into court by the insurer does not affect the rights of the claimed beneficiaries. The only office served by the interpleader and deposit of the fund is to protect the insurer against double liability.

Ethel Jones claims to be a promisee for value by reason of the following facts, which the evidence establishes: In 1927, the insured, "a lawyer and a stock raiser," of Ryegate, Mont., had in his employ as stenographer, the cross-complainant, Ethel Jones (née Stinton). By reason of "drought and grasshoppers" he was short of funds. He told cross-complainant the premium on the policy in issue for 1926 was in default, and for 1927 was due, and he would let the policy go.

Cross-complainant and insured were good friends, and she persuaded the insured not to default this as he had the other policies. He had at different prior times borrowed money from cross-complainant. He then said that if cross-complainant "would pay up his premiums, keep his premiums and insurance in good standing, that the policy was mine (hers) until the liquidation of the debt was paid to me (her)."

Cross-complainant thereupon reinstated the policy, paid the premiums to that date, and continued to pay the premiums annually until the date of the insured's death, in the total sum of $537.72. It is obvious that these payments were not voluntary payments, as contended by cross-defendant. As to these payments with legal interest from the date of the respective payments, there can be no doubt as to the existence of the lien on the fund in this court (proceeds of the policy).

The more serious question, was a contract supplanting the beneficiary by Ethel Jones, for a consideration, made? Ethel Jones and the deceased "had anticipated marrying in the future for a number of years before we were married,"

June 29, 1935. She was in the employ of his office during 1927 and 1928 while he was county attorney of the county of his residence. After 1928, she "worked as Deputy Clerk of Court and as assistant (in) County Superintendent's office for eight years." Prior to the marriage, approximately in April, 1935, in contemplation of matrimony, they discussed their financial relations. Cross-complainant says that the deceased stated to her: "He said that as long as we are getting married that whatever was mine was his, and whatever was his was mine, and that upon our marriage that we would transfer the beneficiaries of our insurance to each other."

About the first week of August, 1935, following the marriage, "we talked it over and I said, * * * 'my premiums are due, therefore I am sending in my two policies and asking the two companies to change my beneficiaries to you as my husband, according to our agreement.' " After "register of change of beneficiary," she said, "I showed them to my husband and told him that I had made him beneficiary to my two policies in accordance with our agreement, and he said, 'I must attend to mine.' "

Upon objection and motion to strike, upon the ground that the communications between husband and wife are inadmissible, this testimony was received upon a reserved ruling.

The competency of Ethel Jones' testimony as to statements of deceased during marriage is governed by section 631, U.S. Code, tit. 28 (28 U.S.C.A. § 631), which in this case makes applicable section 1881 (1) of the Code of Civil Procedure of California (as amended by St.1935, p. 1609), which provides: That husband and wife cannot, "during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but with this exception does not apply to a civil action."

Husband and wife may make contracts between themselves and hold property in severalty. Section 158 Civil Code, California. The rule fixing confidential communications between husband and wife, stated in the clause preceding the section, 1881, supra, is to "encourage confidence and preserve inviolate" the conjugal confidence was stated in the criminal case of People v. Mullings, 83 Cal. 138, 23 P. 229, at page 230, 17 Am.St.Rep. 223, where by

cross-examination of the defendant husband (in a criminal case) it was sought to elicit statements made to his wife, clearly confidentially communicated in marital relation. This case, it is contended by cross-defendant, is decisive here, as it construes the California statute and is binding on this court. This, it will hereinafter appear, is unfounded. By section 1881, supra, the rule is founded in public policy, and until the contrary appears all communications between husband and wife are presumed to be confidential, and this presumption was not overcome in People v. Mullings, supra. The confidential communication was the only issue before the court. The court expressed no opinion on a communication obviously not confidential and relating to civil matters adjusting their property rights between them. When the confidential relation disappears it would be "an intolerable anomaly in the law in confidential communications" to so continue it. Wigmore on Evidence, Vol. 4, p. 3263. And the California Court did not do so.

The statement "to encourage confidence and preserve inviolate" conjugal relations, preceding, the exception during the marriage or afterwards, etc., must be considered with relation to each other, and, when so applied, it clearly shows that the limitation is lifted when the marital confidential relation disappears. The rule can only apply as to matters received through the confidential marriage relation. 40 Cyo. 2354. It is the confidential marital communication that is protected. There can be no public policy except to foster the conjugal status. Sexton v. Sexton, 129 Iowa 487, 105 N.W. 314, 2 L.R.A.(N.S.) 708; Sackman v. Thomas, 24 Wash. 660, 64 P. 819; Van Alstine's Estate, 26 Utah 193, 72 P. 942; Graves v. Graves, 70 Ark. 541, 69 S.W. 544; State v. Snyder, 84 Wash. 485, 147 P. 38; Ward v. Oliver, 129 Mich. 300, 88 N.W. 631; State v. Pearce, 87 Kan. 457, 124 P. 814; Moseley v. Eakin, 15 Rich. (S.C.) 324, 339; Macon Ry. Co. v. Mason, 123 Ga. 773, 51 S.E. 569; Stanley v. Stanley, 112 Ind. 143, 13 N.E. 261.

The case at bar is clearly distinguished from People v. Mullings, supra, in that the testimony sought from the husband witness (criminal case) was clearly a confidential communication and challenged the public policy, whereas the testimony given by Ethel Jones was not a marital

162

confidential communication, the publica-. tion of which tended to betray conjugal confidence and trust, or tended to produce discord between husband and wife. N. Y. Life Ins. Co. v. Mason, 272 F. 28 (C.C.A. 9). The husband and wife could hold separate property and contract with relation thereto (the insurance policies were property and this is a civil action), and in so contracting the statement from one to the other was not and did not tend to be a marital confidential communication, but was of a civil matter affecting their respective properties.

Judge Gilbert for the circuit court, with whom sat Circuit Judges Ross and Morrow, in New York Life Ins. Co. v. Mason (C.C. A.) 272 F. 28, 32, supra, passed upon a Montana statute identical with the California statute, Rev.Codes 1907, § 7891, as amended by Laws 1913, c. 41, and section 7892. The applicable provisions of the Montana statute follow: "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: 1. A husband cannot be examined for or against his wife, without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action."

The court said, after reciting some testimony: "The testimony which the plaintiff gave as to communications from her husband were not, within the meaning of the statutes, confidential disclosures or communications, the publication of which would betray conjugal confidence and trust or tend to produce family discord"—citing Clements v. Marston, 52 N.H. 31, 38; Parkhurst v. Berdell, 110 N.Y. 386, 18 N.E. 123, 6 Am.St.Rep. 384; Greenlee v. Kansas City Casualty Co., 192 Mo.App. 303, 182 S.W. 138. This case was decided April 4, 1921, long after People v. Mullings, supra, relied on by cross-defendant, which was decided February 10, 1920.

In Halback v. Hill, 49 App.D.C. 127, 261 F. 1007, the Court of Appeals of the District of Columbia held to the like effect. See, also, Citizens' National Bank of Los Angeles v. Santa Rita Hotel Co., 22 F.(2d) 524 (C.C.A.9); Pennsylvania R. Co. et al. v. Wolfe, 203 Pa. 269, 52 A. 247; Fountain & Herrington v. Mutual Life Ins. Co., 55 F.(2d) 120 (C.C.A.4).

The objections to the statement of Ethel Jones between herself and her deceased husband during marriage, supra, are overruled, and the motion to strike, denied. Exceptions to cross-defendant noted.

■ Aside from a consideration of the testimony hereby admitted, the court finds that a contract for a consideration was made between Ethel Jones, cross-complainant, and the insured, her deceased husband, prior to the marriage. By this contract it was agreed that upon marriage they would transfer the beneficiaries in the insurance policies held by them respectively to each other. Following the marriage, Ethel Jones did, pursuant to this contract, change the beneficiary in her policies to her husband. She so advised the deceased, and he said, "I must attend to mine." The contract having been made before marriage, the performance on the part of Ethel Jones was a continuing act in completion of the agreement, and the change of beneficiary is a corroborating fact of the contract, previously made. She having performed her part, the deceased dying without performance, equity must decree that done which should have been done. Butler et al. v. Douglass et al. (C.C.) 3 F. 612; Lovinger v. Garvan (D.C.) 270 F. 298; New York Life Ins. Co. v. Mason (C.C.A.) 272 F. 28.

■ That the deceased was somewhat dilatory in his business practices as to personal affairs is uncontradicted in the record, and his failure to change the beneficiary to cross-complainant for six months after marriage, pursuant to the agreement made prior to the marriage, is not vital, nor is the credibility of cross-complainant on the record affected because she did not during deceased's illness, while in the hospital, have him change the beneficiary as contended by cross-defendant. This demonstrates, rather, a sincere and warm consideration for the welfare of the deceased in the maintenance or creation of a psychological mental atmosphere, inspiring hope of recovery, thereby summoning and invoking the power of mind over matter in aid of recovery rather than the cold selfish spirit of a "Shylock" demanding on the brink of the grave the "forfeit of my bond," and perhaps precipitating fatal consequences.

It is said at bar, that the deceased, being a lawyer, if an enforceable agreement had been made, knew how to change the beneficiary and would have done so. More forceable is the thought, if he thought about the matter, he knew that the wife had performed her part, and an enforceable agreement had been made, and the wife was fully protected, and in his weakness rested at ease. There is no suggestion or inference of any sort on record or at trial that the cross-complainant was or is a "gold digger," but it does appear that she was helpful to the deceased and considerate of his welfare during the "many years" they were contemplating marriage, and during the marriage.

 There is some testimony on the part of the cross-defendant, not as to the contracts, supra, having relation to the payment of the premiums and the changes of the beneficiary in their several policies in consideration of the marriage, but of subsequent acts and statements to affect cross-complainant's credibility and verity of her statements. This testimony is emphatically denied. It should also be noted that the cross-defendant between whom and cross-complainant a conversation was in substance repeated by a witness for the defendant (a son) who was not present, but fixes his presence in a room near the room in which the conversation was had, was not called as a witness and was not in court, but appeared to be in the district. No reason was given for her non-appearance other than the statement of her son, who is one of her attorneys, made in court, "in my judgment she is not able to be here." It is in evidence that she is 78 years old. That age of itself would not nor would the statement be sufficient to toll the rule. The old familiar rule that where a material witness is available and not produced without reasonable excuse, it would be considered that such witness, if called, would not support the party who should have produced the witness. Mammouth Oil Co. v. U. S., 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137. The same would apply to a party. The rule will not be invoked here. The defense testimony is not such as to impair the cross-complainant's testimony. The appearance of the cross-complainant upon the witness stand, her manner of testifying, conduct and demeanor, prompt and apparent frank answers without effervescing fulsomeness, and reasonableness thereof, has the ring of truth, and being corroborated by the acts of the par-

ties, as disclosed in the record and herein, is clearly convincing.

I have examined and considered the cases cited by the cross-defendants, Kershaw v. Madsen, 62 Cal.App. 11, 216 P. 55; Falk v. Wittram, 120 Cal. 479, 52 P. 707, 65 Am.St.Rep. 184; Pimental et al. v. Conselho Supremo de Uniao Portugeuza do Estado da California et al., 6 Cal.(2d) 182, 57 P.2d 131, 88 A.L.R. 239 (Annotations on Voluntary Payments); Smellie v. Southern Pac. Co., 212 Cal. 540, 299 P. 529; and Freund v. Freund, 218 Ill. 189, 75 N.E. 925, 109 Am.St.Rep. 283, and where out of harmony with cited cases, supra, except as hereinbefore distinguished, they are not in point or not persuasive. Decree for cross-complainant.